Beaver Gasoline Company *v.* Osborne Borough et al., Appellants.

Argued September 30, 1971. Before Jones, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*William Howard Colbert,* with him *Robert A. Rundle,* and *Wright and Rundle,* for appellants.

*James W. Dunn, Jr.,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, December 29, 1971:

The DiGirolamos are the owners of a parcel of land situate in the Borough of Osborne, Allegheny County, which lies within an area of the borough zoned "C" Commercial. They entered into an agreement of sale with the corporate appellee, Beaver Gasoline Company, contingent upon the issuance of a building permit for the construction of a gasoline service station on the parcel in question. Osborne Borough is divided into three areas for zoning purposes. There is an "A" Residential zoning district, a "B" Residential zoning district, and a "C" Commercial district. The "C" Commercial district exists in the southwest corner of the

township and permits certain commercial uses enumerated in the ordinance. Also permitted in the "C" Commercial district are those uses which are permitted in the residential districts, but the residential use districts are restricted to single family dwellings, churches, educational institutions, libraries, professional offices and certain accessory signboards. The only essential difference between the restrictions placed on the "A" Residential districts and the "B" Residential districts concerns lot size. The ordinance then provides that all other uses in the "C" Commercial district are prohibited "including therein specifically the following: (1) gasoline service stations. . . ." It is then clear, and it is undisputed, that the zoning ordinance of the Borough of Osborne prohibits gasoline service stations within the territorial limits of the borough.

Beaver applied for a permit to erect a gasoline service station, and the permit was refused on the basis of the prohibition against gasoline service stations in "C" Commercial districts. An appeal to the borough's zoning hearing board ensued, which consisted, to all practical intents and purposes, of a submission by Beaver of its application and building plan and its statement that the sole issue before the zoning board was the constitutionality of the ordinance. The borough took the position that it was not required to explain the basis for the refusal of the building permit and the record, therefore, contains no further evidence. The zoning board affirmed the refusal of the building permit, having concluded that the prohibition contained in the ordinance was binding. An appeal was taken to the Court of Common Pleas of Allegheny County, which took no additional evidence and affirmed the action of the zoning hearing board. On appeal, the Commonwealth Court, in an opinion by Judge CRUMLISH, reversed, holding the prohibition in the ordinance to be

unconstitutional. Judge MANDERINO and Judge KRAMER filed concurring opinions, and President Judge BOWMAN and Judge MENCER filed dissenting opinions. We allowed an appeal and specifically directed the parties "to brief and argue the question of whether a municipality should bear the initial burden of demonstrating the constitutionality of a zoning ordinance which completely prohibits an otherwise legitimate business operation in the municipality."

Much has been written in decided cases concerning the burden of proof problem which arises when a litigant seeks to have legislation, whether by statute or ordinance, declared unconstitutional. We have long held that a challenge to the constitutionality of a zoning ordinance must overcome a presumption of its validity. *Nat. Land & I. Co. v. Easttown Twp. Bd. of A.,* 419 Pa. 504, 215 A. 2d 597 (1965), *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A. 2d 863 (1964), *Anstine v. Zoning Bd. of Adjustment,* 411 Pa. 33, 190 A. 2d 712 (1963). However, we have also held that a zoning ordinance which totally excludes a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confined that business to a certain area in the municipality. *Exton Quarries, Inc. v. Zoning Bd. of Adj.,* 425 Pa. 43, 228 A. 2d 169 (1967), *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 223 A. 2d 683 (1966), *Norate Corp., Inc. v. Zoning Bd. of Adj.,* 417 Pa. 397, 207 A. 2d 890 (1965). In *Girsh Appeal,* 437 Pa. 237, 263 A. 2d 395 (1970), we held that the constitutionality of a zoning ordinance which totally prohibits legitimate uses or fails to provide for such uses anywhere within the municipality should be regarded with particular circumspection. In the light of these views, we must decide what is required of one who seeks to in-

validate a zoning ordinance on the grounds of unconstitutionality in overcoming the presumption of validity.

The borough takes the position that the applicants have the burden of producing evidence to show that the prohibition under attack bears no reasonable relationship to the public health, safety and general welfare. The borough concedes, of course, that the power to zone can only be exercised validly in connection with the protection of such public interests. It maintains that since the property owners have introduced no evidence, they have not overcome the presumption of constitutionality. The applicants, on the other hand, submit that where an ordinance includes the total prohibition of an otherwise legitimate business, the burden is on the municipality to show the public interest sought to be protected and the basis for the exercise of its police power.

We are not prepared to, nor do we, abandon our established policy that the validity of a zoning ordinance is presumed and that the burden of establishing its invalidity is upon the party who seeks to have it declared invalid. However, requiring an applicant for a building permit to establish by affirmative evidence the nonexistence of a proper zoning purpose in the total prohibition of an otherwise legitimate business activity would be to place upon him an unrealistic and insurmountable burden. It is always difficult to prove a negative—to require a party to prove a negative such as the nonexistence of a proper zoning purpose is to raise difficulty to virtual impossibility. Common knowledge indicates that certain types of business activities, by reason of the particularly objectionable quality of those activities, are undesirable land uses and total prohibition would appear prima facie to be designed to protect those public interests which zoning

statutes permit municipalities to protect. In the instant case, we are not dealing with such an activity. Were this ordinance to ban from the borough an activity generally known to give off noxious odors, disturb the tranquility of a large area by making loud noises, have the obvious potential of poisoning the air or the water of the area, or similarly have clearly deleterious effects upon the general public, the situation would be entirely different from that in the instant case.

Here, the applicant can do no more, realistically, than show that the zoning ordinance has banned from the borough in its entirety a type of business activity which, in our society, is conducted without hindrance, it seems, almost everywhere. What more can the applicant do to meet his burden? We believe that at least in those circumstances where a total municipality-wide prohibition of an activity which, on its face, does not give rise to an indication of the protection of a legitimate public interest controllable by zoning laws, the applicant has met his burden by showing the total prohibition and the municipality must then establish the legitimacy of the prohibition by evidence establishing what public interest is sought to be protected.

The presumption of the validity of governmental actions is no stranger to the law. For example, in tax assessment appeals the validity of the tax assessment is presumed. Where, however, the taxpayer presents evidence drawing the validity of that tax assessment into question, the taxing authority may no longer rely upon the presumption, but is required to present evidence in support of the assessment to sustain its validity. Similarly, although in criminal cases the Commonwealth is entitled to a presumption of the sanity of the criminal defendant, once he has introduced evidence drawing his sanity into question, the Commonwealth may no longer rely upon that presumption, but

is required to prove sanity, as it must every other element of the case, by affirmative evidence.

In situations involving the total prohibition of otherwise legitimate land uses, which, by common experience, appear to be as innocuous as the land use here contested, the applicant has met his burden of overcoming the presumption of constitutionality by showing the total ban. Thereafter, if the municipality is to sustain the validity of the ban, it must present evidence to establish the public purpose served by the regulation. It is not inconceivable, of course, that the municipality could establish the validity of a total ban, but it is its responsibility to do so. In the instant case, the municipality offered no evidence to establish the validity of the regulation and has, consequently, failed to show that the regulation bears a relationship to the public health, safety, morals and general welfare. It must be stated, however, that a reading of the prior law in this field indicates that until the date of this opinion municipalities were not aware of any duty to come forward with any evidence in order to sustain their zoning ordinances. The municipality undoubtedly believed that it was safe in relying upon the presumption of validity which we now hold was overcome when the applicant showed the total ban. Therefore, rather than affirming the order of the Commonwealth Court which overturned the ordinance because of the borough's failure to justify it, we will remand the case to allow the borough to produce additional evidence.

The orders of the Commonwealth Court and the Court of Common Pleas of Allegheny County are vacated and the case is remanded to the Zoning Hearing Board of the Borough of Osborne for further proceedings consistent herewith.

Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.

CONCURRING OPINION BY MR. JUSTICE JONES:

While my views on exclusionary zoning differ from a majority of my colleagues, *see Girsh Appeal,* 437 Pa. 237, 248-54, 263 A. 2d 395, 400-403 (1970) (dissenting opinion), I am able to agree with the legal principle adopted by the majority opinion.

With all deference to the language chosen by the majority, I believe the concept enunciated today requires a careful, definitional examination of "burden of proof"—an often misunderstood, legal phrase. In my opinion, much of the apparent confusion among the opinions of the Commonwealth Court stems from the failure to distinguish the two separate principles collectively termed "burden of proof": (1) risk of nonpersuasion; and (2) burden of producing evidence. IX Wigmore on Evidence §§2485-89 (3d ed. 1940). Indeed, "the lamentable ambiguity of phrase and confusion of terminology," IX Wigmore on Evidence §2485 at 271 (3d ed. 1940), has infected much of our case law and is not unique to this area of law.

The party saddled with the risk of nonpersuasion or burden of persuasion remains under its weight throughout the proceedings as a matter of law, IX Wigmore on Evidence §2489 at 285 (3d ed. 1940), and will not prevail in case of doubt. On the other hand, the burden of producing evidence often shifts throughout the proceedings. When we couple these concepts with the presumption of validity of a zoning ordinance, the framework of our case law as discussed by the majority becomes apparent: (1) the party attacking the constitutionality of a zoning ordinance must always bear the risk of nonpersuasion; (2) reflecting the normal situation where the same party must initially bear both the persuasion burden and the production burden, the party attacking the constitutionality of most zoning ordinances must initially face both burdens; and (3)

when dealing with certain suspect classifications such as exclusionary zoning, the burden of producing evidence is first placed on the municipality.

Notwithstanding my somewhat different approach to the problem presented, I share the majority's view that municipalities which totally prohibit an otherwise legitimate business operation must first introduce evidence demonstrating a reasonable relationship between the ordinance and the public health, safety, morals and general welfare of the community.

Mr. Justice POMEROY joins in this concurring opinion.