East Pikeland Township, Appellant, *v.* Bush Brothers, Inc., Appellee.

Argued April 2, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER and BLATT. Judge ROGERS did not par-
ticipate.

*James E. McErlane,* with him *Lamb, Windle & Mc-
Erlane,* for appellant.

*William H. Rivoir, Jr.,* with him *John S. Halsted*
and, of counsel, *Gawthrop & Greenwood.*

OPINION BY JUDGE KRAMER, May 28, 1974:

This is an appeal filed by East Pikeland Township
(Township) from an order dated July 10, 1973, of the
Court of Common Pleas of Chester County directing
the Township to issue a building permit to Bush
Brothers, Inc. (Bush).

In the interest of a complete understanding of this opinion, it is necessary to delve into some of the historical background as contained in the record. Ogden FitzSimons and his wife are the owners of a tract of land in East Pikeland Township comprising some 64 acres, of which 27 acres are situate in an R-2 zone. The remaining acreage was located in an L1 zone. The zoning ordinance in question became effective January 3, 1970. In April or May of 1970, FitzSimons, who is the president and principal stockholder of Bush, presented a proposal to the Township to construct and establish a mobile home park on the entire 64 acres. After being advised that the L1 district did not permit mobile-home usage, FitzSimons requested the Township to change its zoning ordinance so as to permit mobile-home usage on the entire tract of land. A hearing was held on June 24, 1970, and on August 3, 1970, FitzSimons was advised that his request had been denied.

At about this same time, a petition was circulated under which approximately 1,200 citizens requested the Board of Supervisors of the Township to change the zoning density applicable to mobile home parks in an R-2 district from seven units per acre to two units per acre. As a result of the hearing held June 24, 1970 and the petition of the citizens, the Board of Supervisors of the Township on August 3, 1970 resolved to amend the zoning ordinance by eliminating all references to mobile home parks in any part of the ordinance, and, as found by the court below, such amendment was intended for the purpose of eliminating such land use entirely from the Township. In the interim, FitzSimons filed an application for a variance and a special exception for the property zoned L1 and R-2, respectively. The variance on the portion of the premises located in the L1 district was denied, and FitzSimons withdrew an application for a special excep-

tion on the R2 portion on July 13, 1970, for reasons not pertinent to this opinion.

In any event, on August 8, 1970, Bush filed an application for a special exception requesting a permit to construct a mobile home park on the 27 acres of unimproved farmland located in the R-2 district. The accompanying documents, all of which appear to be in accordance with the Township's zoning ordinance, indicate, among other things, that the proposed development would consist of 94 mobile home units on the 27-acre plot. As of the date of this application, the zoning ordinance provided in Section 500.B.1 for multiple family dwellings with a density not exceeding 12 families per acre and mobile home parks with a density not exceeding seven families per acre, when authorized as a special exception.

However, on August 31, 1970, the Board of Supervisors amended the zoning ordinance by deleting from Section 500.B.1 the words "and Mobile Home Park not exceeding seven (7) families per acre" and by deleting the definition of mobile home park. The term "mobile home," however, was retained in the definitional provisions of the zoning ordinance. The Township contends that this amendment resulted in mobile homes becoming subject to the zoning ordinance provisions applicable to every other single-family detached structure, i.e., a minimum lot area of 25,000 feet if off-site sewage is provided. This, of course, results in something less than two units per acre.

In October of 1970, a hearing was held on Bush's application for a special exception, and on February 3, 1971, the Zoning Hearing Board (Board) denied the application. In its adjudication, the Board made a finding of fact and also a conclusion of law in which it was stated that a mobile home park was "not a permitted use anywhere in East Pikeland Township." In its discussion, the Board stated: "The special excep-

tion must be denied, since a Mobile Home Park is not a permitted use anywhere in the Township, by way of special exception or otherwise, under the terms of the Zoning Ordinance amended August 31, 1970." Bush appealed to the court below, and on May 30, 1972, that court likewise concluded that the subject zoning ordinance provision amounted to a total prohibition under the teaching of the *Girsh Appeal,* 437 Pa. 237, 263 A. 2d 395 (1970).

The lower court, however, under the principles announced by our Supreme Court in *Beaver Gasoline Company v. Osborne Borough,* 445 Pa. 571, 285 A. 2d 501 (1971), remanded the matter to the Board with directions to hold an additional hearing to afford the Township the opportunity "to produce evidence to establish the public purpose served by the amendment to the zoning ordinance." After said rehearing, the Board found that the zoning ordinance had not been amended to permit mobile home park usage, and that it would not be feasible to construct such a park on the 27 acres in question under the ordinance. Under the then existing provisions of the zoning ordinance, the Board concluded that mobile home parks were not a permitted use in the Township's zoning ordinance, and that the Township had not produced evidence which would support its contention "that mobile home parks are harmful to the general public welfare, health, or morals."

Once again the matter was returned to the court below. After a review of the transcript of the supplemental hearing and adjudication, the lower court concluded that the Township had not met its burden of showing that the prohibition against mobile home parks had a reasonable relationship to the public health, safety, morals and welfare, and that the blanket prohibition violated "the provisions of Article I, Section 1 of the Constitution of Pennsylvania and the Fourteenth Amendment of the Constitution of the United

States." As stated before, the court ordered the Township to issue a building permit and from that order, an appeal was taken to this Court.

The Township, in its argument before this Court, has changed its tack. It now argues that after the August 31, 1970 amendments, mobile home parks should have been declared to be like any other group of single-family detached dwellings. Therefore, the Township urges that since mobile homes are permitted uses within an R-2 residential district, they should be subject to all of the regulations applicable to such single-family detached dwellings. If the record in this case supported that contention, we might be faced with a different issue from the one presently confronting us. Unfortunately for the Township, this record spells out a clear intention on the part of the supervisors, who adopted the August 31, 1970 amendment, to accede to the wishes of the 1,200 citizens and to purposefully eliminate mobile home parks throughout the entire Township. We have carefully read the entire record, and it fully supports the findings and conclusions of both the zoning hearing board and the court below that the intent and effect of the August 31, 1970 amendment was to prohibit a Township-wide land usage for mobile home parks.

In the past four years, there have been at least a dozen appellate court decisions in this Commonwealth holding that a township-wide ban on an otherwise legitimate use of property without proof that such use is injurious to the public health, welfare and safety is unconstitutional. *See Beaver Gasoline Company v. Osborne Borough, supra; Girsh Appeal, supra; Camp Hill Development Co. v. Zoning Board of Dauphin,* 13 Pa. Commonwealth Ct. 519, 319 A. 2d 197 (No. 1205 C.D. 1973, filed May 9, 1974); *Sauer v. Richland Township,* 8 Pa. Commonwealth Ct. 464, 303 A. 2d 269 (1973); *Willistown Township v. Chesterdale Farms,*

*Inc.,* 7 Pa. Commonwealth Ct. 453, 300 A. 2d 107 (1973). We need not spell out once again all of the many reasons why such township-wide zoning prohibitions are unconstitutional. All of those reasons are set forth in the above-noted citations. This case, by comparison, is even stronger, for in this case we have proof of a deliberate exclusion. This is not even a case where the governing body disguised the intended prohibition. In this case, there is testimony of the Board of Supervisors stating quite frankly for the record that their intent was to carry out the desires of at least 1,200 of their constitutents to remove mobile homes as a permitted use throughout the Township. The law will not permit the Township to accomplish such a prohibition. Even after the supplemental hearing ordered by the court below, the Township failed to meet its burden of proving that the intended prohibition was adopted to preserve the public health, welfare or safety of the community.

In summary, we hold that neither the zoning hearing board nor the court below abused their discretion or committed an error of law. Therefore, the order of the court below directing the Township to issue a building permit in accordance with the application therefor is hereby affirmed.