Frank N. Pyle, Appellant *v.* Harmar Township Zoning Hearing Board, Appellee.

Argued March 3, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John B. Nicklas, Jr.*, with him, *Alfred C. Maiello*, and *McCrady, Nicklas, McCrady & Maiello*, for appellant.

*John M. Means*, for appellee.

OPINION BY JUDGE BLATT, June 18, 1975:

This is an appeal from the Court of Common Pleas of Allegheny County which in an opinion dated July 22, 1974 dismissed Frank N. Pyle's appeal from a decision of the Zoning Hearing Board (board) of Harmar Township (Township).

On November 14, 1973 Mr. Pyle, the owner of a 64.96 acre tract in the Township, submitted to the board a challenge to the validity of the Township zoning ordinance under Sections 910 and 1004 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10910 and 11004. On March 4, 1974 the board after holding a hearing issued its decision rejecting the landowner's challenge and denying him zoning approval. The lower court affirmed after taking additional evidence. Hence Pyle presently appeals to this Court.

Our scope of review here in a zoning case where the court below took additional evidence is to determine whether the lower court committed an error of law or abused its discretion. *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment,* 13 Pa. Commonwealth Ct. 519, 319 A.2d 197 (1974).

Pyle intends to develop the subject tract as a mobile home park. The tract is located almost entirely in an R-1 district although a small portion of it is located in an R-2 district. Section 13 of the ordinance permits mobile home parks as a conditional use in R-1 and R-2 districts according to the following "Development Standards" relating to density and setbacks:

"a. Minimum size of site: Ten (10) contiguous acres;

"b. Minimum gross site area per mobile home: Six (6) per acre[1];

"c. Minimum setbacks from site property line to side or rear of closest mobile home: Fifty (50) feet;

"d. Minimum setbacks from public road right-of-way to side or rear of closest mobile home: Fifty (50) feet;

"e. Minimum setbacks within the site—

---

1. We interpret this to mean that six mobile homes are permitted per acre.

"i. between edge of access street and end or side of mobile home: Thirty (30) feet;

"ii. between parallel ends of adjacent mobile homes: Thirty (30) feet;

"iii. between parallel sides of adjacent mobile homes: Sixty (60) feet;

"iv. between the end of one mobile home and the parallel side of an adjacent mobile home: Thirty-five (35) feet;

"v. determination of relationship of adjacent mobile homes: Sides or ends of adjacent mobile homes shall be considered parallel if they form an angle, when the adjacent sides or ends are extended to intersect, of not less than forty-five (45) nor more than one hundred thirty-five (135) degrees;"

Pyle wishes to take advantage of the maximum density permitted by the ordinance on some portions of his property but he claims that he cannot meet the setback requirements if he places six units on an acre. He argues that the ordinance's requirements are, therefore, inconsistent in that six mobile homes of the size customarily manufactured today will not fit on an acre if the required minimum setbacks are observed. His expert witnesses established that virtually all mobile homes built today for residential use measure at least 12 feet in width and 60 feet in length so that an acre could not contain six such homes if they were properly spaced. Only by using 10′ x 40′ size trailers could a landowner locate six per acre. That size trailer, if built at all today, would apparently be appropriate only for office use. If the standard 12′ x 65′ mobile home were used, and the setback requirements were observed, a developer could locate at most 4 per acre. The ordinance, however, clearly contains no inconsistency. It merely establishes six as the maximum density; it does not prescribe six as a mandatory level of density nor does it guarantee that six mobile

homes will fit on an acre. The landowner is obviously free to place any number per acre which he desires so long as the number does not exceed six.

Pyle alternatively argues that the ordinance was drafted and adopted with the intent of imposing improper burdens on a mobile home park developer and with the purpose of preventing such development. He contends that the ordinance is, therefore, unconstitutional. It is, of course, firmly established that a challenge to the constitutionality of a zoning ordinance must overcome a strong presumption of its validity. *National Land and Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965) ; *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A.2d 863 (1964). The landowner may, however, meet this burden by proving a municipality-wide prohibition of an activity which, on its face, does not give rise to an indication of the protection of a legitimate public interest. *Beaver Gasoline Company v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971) ; *East Pikeland Township v. Bush Brothers, Inc.,* 13 Pa. Commonwealth Ct. 578, 319 A.2d 701 (1974). But under Harmar Township's ordinance it is clear that mobile home parks are permitted as a conditional use. At least 4 standard size trailers can be located per acre. Pyle himself plans to use mostly 70' x 12' units along with some 24' x 50' double-wide units. Even if these sizes were used in the proportions which he plans, 4 units could be located per acre. Surely we cannot thereby impute to the Township an intent to inhibit mobile home park development, at least not without some further proof by the developer.

In *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board,* 5 Pa. Commonwealth Ct. 594, 290 A.2d 719 (1972) we considered the constitutionality of an ordinance which provided that the smallest permitted lot size for a mobile home was 10,000 square feet. The landowner in that case failed to demonstrate that under that requirement a mobile home park could not feasibly be created

and conducted on his property and we, therefore, held that he failed to overcome the presumption of validity. The record is equally deficient here. In fact Pyle desires to place only 233 units on the tract, whereas the ordinance even as it exists, would permit him considerably more of the same size units if he were to spread them out more evenly over his entire tract. He wishes, however, to cluster the units so that up to six can be located on a single acre, both for aesthetic reasons and also to economize somewhat in the building of roads and the provision of services. Although from a policy standpoint there might be some merit to relaxing the setback requirements under certain conditions and allowing more clustered development, we may not substitute our judgment for that of the proper legislative body. The courts will interfere with the legislative judgment and declare an ordinance unconstitutional only where it is proved that its provisions are clearly arbitrary and unreasonable and have no relation to the public health, safety, morals or general welfare. *Campbell v. Zoning Hearing Board of Plymouth Township,* 10 Pa. Commonwealth Ct. 251, 310 A.2d 444 (1973).

The reasons for setback regulations are numerous and are well rooted in the exercise of the police power. Some of the evils sought to be avoided thereby might include: the inhalation of noxious odors and gases, overcrowding, the denial of natural light, and the narrowing of accessible fire lanes. *See Fagan v. Zoning Board of Adjustment,* 389 Pa. 99, 132 A.2d 279 (1957). The regulation of "open spaces and distances to be left unoccupied by uses and structures" is stated by Section 603(3) of the MPC, 53 P.S. §10603(3) to be properly within the scope of a zoning ordinance.

Pyle particularly attacks as unreasonable the requirement that there be a 60-foot setback between parallel sides of adjacent mobile homes. But as explained by the Township's planning consultant, mobile homes usually face sideways in relationship to the adjacent roadway so

that it is more appropriate to provide outdoor living space on the sides rather than in front of the building. This arrangement is in contrast to that usually provided in the case of a permanent dwelling.

Pyle also asserts as error the trial judge's exclusion of testimony and exhibits relating to setback requirements governing mobile home park developments in other municipalities. We must affirm the trial court's exclusion of such evidence. Each municipality may set its own standards so long as they do not become unreasonable. The reasons for and against various setback limitations may certainly change from municipality to municipality. The limits of reasonableness cannot be judged by merely determining what the most commonly used setback requirements are. A landowner challenging the constitutionality of an ordinance cannot meet his burden of proof by showing that the dimensions of the lots it proposes are similar to those usually found in mobile home parks. *Colonial Park, supra.*

Since Pyle was properly denied a conditional use because of his failure to comply with the valid setback provisions of the ordinance, we need not consider whether or not the other reasons given by the Township for denying the use were proper.

The order of the lower court is hereby affirmed.