404 A.2d 393

Edward F. KAVANAGH, Huston T. Adams and Robert M. Abernethy, Appellants,

v.

LONDON GROVE TOWNSHIP and Daniel E. Blevins, Helen K. Blevins, Samuel L. Coates, Elkins Wetherill, Harriet Wetherill, Jess E. Bewley, Evelyn D. Bewley, Anna Barlow, Mary Helen Pierce, Julius J. Willa, Jr., John Speakman, Lillian Speakman, and Booth Yarnall, Intervenors.

Supreme Court of Pennsylvania.

Argued April 24, 1979.

Decided July 6, 1979.

Reargument Denied Aug. 22, 1979.

---

1. Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.* 19 P.S. 1180–1 *et seq.* (Supp. 1978–79).

George A. Brutscher, Kennett Square, for appellants.

Lawrence E. Wood, West Chester, for appellee, London Grove.

Robert W. Lentz, John C. Snyder, Paoli, for appellee, Daniel Blevins, et al.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

PER CURIAM:

The Court being equally divided, the order is affirmed.

ROBERTS, J., filed an Opinion in Support of Affirmance in which O'BRIEN and NIX, JJ., join.

LARSEN, J., filed an Opinion in Support of Reversal in which MANDERINO, J., joins.

EAGEN, C. J., would reverse and remand for further proceedings.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Justice.

Today Mr. Justice Larsen declares that a township unconstitutionally exercises its police power under *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 45 S.Ct. 114, 71 L.Ed. 303 (1976) and *Exton Quarries, Inc. v. Bd. of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967), by limiting, under a provision of its zoning, operation of sanitary landfill to a municipality or a municipal authority. It is evident, indeed, cannot be disputed, that sanitary landfill operations affect the health and safety of a community. I would hold, therefore, as the Board, the Court of Common Pleas of Chester County, and the Commonwealth Court, that the township's concerns for public health, manifested by its enforcement of sanitary regulations, and the continued operational stability of township's sanitary landfill operations is entirely reasonable. This governmental exercise of its police function simply cannot be judged so unrealistic as to make the zoning provision unconstitutionally arbitrary.

Reliance on *Exton Quarries*, supra, is entirely misplaced. There, a private quarry business purchased property and established itself in a community which had no zoning ordinance. In response, that community passed an exclusionary ordinance, absolutely prohibiting quarrying. We held, there, that we would not permit use of zoning ordinances to accomplish an unconstitutional exclusion of a legitimate business. Exclusionary zoning cannot be justified merely by a community's preference that certain businesses locate outside its borders. *Exton Quarries*, supra, 425 Pa. at 59–60, 228 A.2d at 179. Here, however, there is no question

of exclusionary zoning and no question of any provision of the zoning ordinance being used as a device to exclude lawful but undesirable activities. Here, the means chosen (the challenged zoning ordinance provision) is indeed rationally related to a legitimate public end (protection of the community's health and safety.) That this ordinance meets the requirements of due process cannot be disputed.

I would, therefore, affirm the unanimous order of the Commonwealth Court, affirming the order of the court of common pleas affirming the order of the London Grove Township's Board of Supervisors which denied appellants an amendment to the zoning ordinance permitting private operation of sanitary landfills.

O'BRIEN and NIX, JJ., join in this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

Appellants are owners of a tract of land situated in an "R–1" residential zone of London Grove Township, appellee, in Chester County. The relevant zoning ordinance of the township provides that operation of a sanitary landfill is a permitted use within an R–1 zone but only if the operator is a municipality or a municipal authority. In January of 1976, appellants filed a petition for a curative amendment to the ordinance which amendment would provide that operation of a sanitary landfill was a permitted use regardless of whether the operator was a municipality, a municipal authority or a private enterprise.

Following hearing, the London Grove Township Board of Supervisors (the Board) denied the application and the Court of Common Pleas of Chester County affirmed without taking additional testimony. On further appeal, the Commonwealth Court unanimously affirmed. *Kavanagh v. London Grove Township*, 33 Pa.Cmwth. 420, 382 A.2d 148 (1977). This Court granted appellants' petition for allowance of appeal on November 9, 1978.

## I. SOLID WASTE MANAGEMENT ACT

Appellant argues that the Pennsylvania Solid Waste Management Act, 35 P.S. § 6001–6017 (1977) (hereinafter the Act) has effected a limited pre-emption in the field of sanitary landfills and that, therefore, municipalities such as appellee township are precluded from adopting any regulations regarding such landfill operations. I disagree. Section 6002 declares the purpose of the Act to:

(1) Establish and maintain a cooperative state and local program of planning and technical and financial assistance for comprehensive solid waste management;

(2) *Utilize, wherever feasible and desirable, the capabilities of private enterprise* in accomplishing the desired objectives of an effective solid waste management program; and

(3) Require permits for the operation of processing and disposal systems.

The Act further provides that the Pennsylvania Department of Environmental Resources (DER) shall administer the Act, and shall establish policies and adopt regulations to effectuate the purposes and provisions of the Act. *Id.* at § 6006. Additionally, section 7 of the Act, 35 P.S. § 6007, sets forth a detailed permit procedure applicable to every person, municipality, county or authority which requires applicants desirous of using their land as a disposal area for a solid waste management system to first obtain a permit from DER.[1] While the Act does express a preference for the utilization of private enterprise, it does not purport to preclude municipalities from promulgating zoning ordinances and regulations in the area of sanitary landfill management, nor am I persuaded to construe the Act as implicitly containing such a preclusion.

The Second Class Township Code, 53 P.S. § 65708, *as amended* (Supp.1978–79) (hereinafter the Code) provides, in

---

1. I note that a permit for operation of a solid waste disposal system on the property in question was issued on September 9, 1977 to appellants (doing business as AAK Sanitary Landfill, F. P. Kavanagh & Son, Inc.) well after the date of the hearing before the Board.

relevant part, that the supervisors of second class townships (such as appellee) shall have power to:

> [R]egulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish and other refuse materials within the township. . . . They shall also have power to—

> (1) Collect, remove and dispose of or to provide, by contract or otherwise, for the collection, removal and disposal, by incineration, *land fill* or other methods of ashes, garbage, rubbish and other refuse materials and to prescribe penalties for the enforcement thereof. . . .

> To acquire any real property and to erect, maintain, improve, operate, and lease, either as lessor or lessee, facilities for incineration, *land fill* or other methods of disposal . . .

Thus, regulation of landfill systems is specifically provided in the Code. It is our duty to reconcile the two legislative enactments and, if possible, to give effect to all of the provisions of each. Statutory Construction Act of 1972, 1 P.C.S. § 1921(a), § 1932 (Supp.1978–79). In this case, reconciliation so as to give full effect to both the Act and the Code is not difficult. A second class township has the power to adopt reasonable regulations and zoning ordinances regarding sanitary landfills so long as the regulations/ordinances are not inconsistent with the Solid Waste Management Act and DER regulations adopted pursuant thereto.[2]

**2.** 35 P.S. § 6010 provides:

(a) Each municipality with a population density of three hundred or more inhabitants per square mile shall be responsible for the collection, transportation, processing and disposal of solid wastes within its boundaries and shall be responsible for implementing their approved plan as it relates to the storage, collection, transportation, and disposal of their solid wastes.

(b) In carrying out its responsibilities, any such municipality may adopt ordinances, regulations and standards for the storage and collection of solid wastes *which shall be in conformity with the rules, regulations, standards and procedures adopted by the department* for the storage, collection, transportation, processing and disposal of solid waste.

(c) Municipalities *may* contract with any person, other municipality, county or authority to carry out their responsibilities for the collection, transportation, processing and disposal of solid wastes.

Since a municipality operated landfill can (and must) be operated in conformity with the rules, regulations and procedures adopted by DER, there is no *inherent* conflict between the municipal ordinance and the Act. Consequently, the Act does not preempt municipalities from the field of landfill regulation.

## II. CONSTITUTIONAL VALIDITY OF THE ZONING ORDINANCE

To say that a municipality has the *power* to enact zoning ordinances for a given purpose is not, however, to sanction the exercise of that power in a manner that is repugnant to constitutionally protected rights. This brings us, therefore, to appellants' principle contention that the appellee's prohibition of private landfill operations and allowance of public (municipal) operations is arbitrary, unreasonable and discriminatory and, hence, an invalid exercise of its police powers. The right to use one's own property as he or she sees fit is a fundamental and constitutionally recognized right. U.S.Const. Amends. V, XIV; Pa.Const. Art. I, § 1. These property rights are not absolute and are subject to reasonable restrictions in the public interest. "Although zoning is, in general, a proper exercise of police power which can permissibly limit an individual's property rights, *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), it goes without saying that this restriction on the individual's right . . . cannot be unreasonable. *E. g. Eller v. Board of Adjustment,* 414 Pa. 1, 198 A.2d 863 (1964)." *Concord Township Appeal,* 439 Pa. 466, 470, n. 1, 268 A.2d 765, 766, n. 1 (1970). The principles guiding to decision have been often enunciated by this Court.

There exists a presumption that a zoning ordinance is constitutionally valid. *Bilbar Construction Co. v. Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958). The burden of establishing its invalidity is upon the party who seeks to have it declared invalid. *Beaver Gas Co. v. Osbourne Borough,* 445 Pa. 571, 575, 285 A.2d 501, 504 (1971). An ordi-

nance which purports to be an exercise of the police power must not be unreasonable, unnecessary or unduly oppressive, and "*the means which it employs must have a real and substantial relationship to the objects sought to be attained.*" *Lutz v. Armour*, 395 Pa. 576, 578–79, 151 A.2d 108, 110 (1959); *Atria, Inc. v. Board of Adjustment*, 438 Pa. 317, 264 A.2d 609 (1970). Thus, zoning ordinances are valid whenever necessary for the preservation of the public health, safety, morals or general welfare, Pennsylvania Municipalities Planning Code, 53 P.S. § 10604 (Zoning Purposes) (1977); *Lord Appeal*, 368 Pa. 121, 125–26, 81 A.2d 533, 535 (1951), but the power to regulate does not permit arbitrary, unreasonable or unnecessary intermeddling with private legitimate businesses. *Gambone v. Commonwealth*, 375 Pa. 547, 551, 101 A.2d 634, 636 (1954). Clearly, as previously discussed, the operation of landfill systems is a proper subject of appellee's concern, but the zoning ordinance, and the public-private distinction therein, must bear a substantial relation to the public health, safety, morals or general welfare.

I know of no directly applicable decisions of this Court wherein a zoning ordinance was challenged because a use was permitted if executed by a municipality while prohibited if executed by a private enterprise. If government were to begin to enact laws which permitted certain entrepreneurial uses but only if the enterprise were conducted by government, it seems certain that in due course the role of government as entrepreneur would be increased to the detriment of private enterprise. It seems clear, therefore, that a zoning ordinance which permitted the operation of a gasoline station, for example, but only if run by government, would be held to be invalid. On the other hand, it is manifest that a zoning ordinance which permitted the operation of a jail, but only if run by the government, would be constitutional. There is, therefore, a line to be drawn between land uses which the government can permit to itself but forbid to private enterprise.

Examining the record in this case, it becomes apparent that the distinction drawn by the township is an artificial one. The purported justifications offered by appellee, intervenors[3] and the Board of Supervisors in support of the distinction are essentially two. These justifications are factually contradicted by the record and each may be accomplished by less drastic means.

First, appellee and intervenors assert that permitting landfills to be operated only by municipalities will result in greater control over problem areas not covered by DER regulations (e. g. blowing litter control at landfill site) as well as more effective enforcement of DER regulations. Municipalities, the argument goes, are more responsive to "public pressure" than private enterprises and thus will be more inclined to comply with DER standards and procedures and to respond to concerns of the residents of the community. There is no factual basis for this assertion—a landfill is a landfill.[4] Problems arise without regard for the form of ownership of the operation. The testimony given at the hearing by DER officials indicates that municipalities suffer from non-compliance as often as do private companies— "public pressure", it appears, is no talisman warding off the evils of landfills. If anything, the record suggests that DER may be more inclined to be lenient with municipal operations

3.  Intervenors are landowners who own property adjacent to the proposed landfill site.

4.  In *Lutz v. Armour*, 395 Pa. 576, 151 A.2d 108 (1959), this Court recognized that garbage was garbage whether it came from within the municipality or without. In that case, a zoning ordinance permitted the operation of garbage collection and disposal facilities for garbage collected within the township (Findlay Township) but prohibited the hauling and disposal of materials originating "from without the township." We said: "[I]n effect the ordinance . . . declares that garbage from without . . . is harmful and deleterious, but that local garbage . . . conforms more to the community's health and general welfare standards. [This] distinction sought to be made is both artificial and devoid of merit." But *cf. Daugherty v. Messner*, 404 Pa. 235, 172 A.2d 288 (1961) (ordinance upheld which prohibited new garbage dumps but permitted an existing one in a district since operator had been operating for quite some time and had been operating under a court order requiring him to use best available methods).

than with private. Further, the preference expressed in the Solid Waste Management Act for private operations contradicts the assumption that municipalities are better able to achieve compliance with DER regulations than are private entrepreneurs.[5]

Even if there were a factual basis for the proposition that municipalities are more effective enforcers, the blanket prohibition of privately operated landfills sweeps too far. The existence of available alternatives that are less obnoxious to constitutionally protected rights renders that prohibition unnecessary and unreasonable. *See National Land and Investment Co. v. Board of Adjustment*, 419 Pa. 504, 215 A.2d 597 (1965) (less drastic means were available to accomplish township's legitimate goals of providing adequate sewerage—partly for this reason, the zoning ordinance was unreasonable and unnecessary); *Concord Township Appeal*, 439 Pa. 466, 268 A.2d 765 (1970) (same); *Exton Quarries, Inc. v. Board of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967) (total prohibition of quarrying operation swept too far—less drastic means available). In this case, the Board of Supervisors found that appellants were willing to accept reasonable controls by the township. Further, the township could, under the authority of the Second Class Township Code, enact reasonable and specific ordinances to deal with specific problems which ordinances would go no further than necessary to correct the particular problem so long as the regulation was not inconsistent with DER regulations, standards and procedures. 35 P.S. § 6010. For example, the problem of blowing litter could be met by requiring the erection of snow fencing and/or daily policing of the area.

It is also asserted that a municipality has no assurances of the financial solvency of a private operator of a landfill and

5. The Board found that public landfills have been "in fact, more responsive to community needs" than private landfills. There is no support for this finding in the record. A DER official testified that in a particular case, a municipality had been very responsive to community needs—he did not testify that the municipality or municipalities generally were more responsive than private businesses.

that the danger of the operator's potential bankruptcy can be solved by permitting municipal operators only. Again, there is no support in the record for this assertion. A DER official testified that in his many years of experience he had never experienced or heard of a private sanitary landfill becoming insolvent, but that he had experienced situations where municipal authorities had used financial difficulties as an excuse for their failure to comply with DER regulations. And, once again, there are less drastic means available to the township to protect against financial insolvency since the Board found that DER had a fund available to use if an operator withdraws or goes bankrupt.

Since there is no basis in fact for the proposition that the public-private distinction bears a substantial relationship to the public health, safety, morals or general welfare, and since any concerns can be protected through means less obtrusive to the property owner's rights, I would hold that the London Grove Township zoning ordinance is an arbitrary, unreasonable and unnecessary exercise of the police power and is, therefore, invalid. While no hard and fast constitutional line of permissible vs. prohibited distinctions should be drawn, it is clear that the township has in this case enacted an ordinance falling on the impermissible side of that line. Accordingly, I would reverse and remand for proceedings consistent with this Opinion.

MANDERINO, J., joins in this Opinion in Support of Reversal.