Frank LUDWIG,

v.

The ZONING HEARING BOARD
OF EARL TOWNSHIP,

Charles, Gloria and Timothy
Martin, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 27, 1995.
Decided April 27, 1995.
Reargument Denied June 19, 1995.

Matthew J. Creme, Jr., for appellants.

Robert M. Frankhouser, Jr., for appellee.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Charles, Gloria and Timothy Martin (Landowners) appeal from the August 16, 1994 order of the Court of Common Pleas of Lancaster County (trial court) reversing the Zoning Hearing Board of Earl Township's (Board's) grant of a variance to Landowners to use their property for a for-profit golf driving range. We reverse.

The critical issue in this case is whether Section 701, subsection 4 of the Township's Zoning Ordinance creates zoning provisions which are not uniform for each class of uses within the Township's rural districts. Landowners assert that subsection improperly excludes a for-profit golf driving range while permitting an identical use if operated by a public or private *non*-profit agency.

In 1992, Landowners purchased 28.206 acres of rurally zoned property at the southwest corner of Philip and New Holland Roads in Earl Township, Lancaster County, Pennsylvania. Soon thereafter, Landowners requested a variance to use ten to twelve acres of the property as a for-profit golf driving range. On November 22, 1993, the

Board denied their request for a variance. (Board's Finding of Fact No. 10, R.R. 127a and Trial Court's Opinion at 1.)

Having already constructed a parking lot for twenty-eight cars on their property,[1] Landowners in 1994 reapplied for a variance to establish the proposed golf driving range [2] and challenged the validity of the ordinance provision requiring a public or non-profit form of ownership. (R.R. 3–5a.) After a February 15, 1994 hearing involving this second variance application, the Board made the following findings regarding the specific aspects of the proposed golf course:

11. The Property contains 28.206 acres and has previously been used as farmland and a meadow.

12. Applicant[s] propose[ ] to utilize ten (10) to twelve (12) acres of the site for a privately operated, commercial, golf driving range.

13. The remaining sixteen (16) to eighteen (18) acres of land would be devoted to farming which is its present use.

14. The tee-off area would be located adjacent to Philip Road and directed towards the southern portion of the Property.

15. The driving range would accommodate twenty-five (25) to thirty (30) people.

. . . .

17. Applicant[s] propose[ ] to erect a 14′ x 32′ office to be used in conjunction with the driving range which would be placed on skids.

18. Applicant[s] would install mesh fencing along New Holland Road which would be 25′ high and which would run from the creek in a southerly direction along New Holland Road for a distance of approximately 720′.

19. The mesh fencing would serve as a barrier to prevent golf balls from escaping on to the roadway.

20. Lighting would be mounted on poles used for the netting and would be directed in a westerly direction away from New Holland Road.

21. The facility would be open from 9 a.m. until 10 p.m. for a period of six (6) to seven (7) months per year and would have two (2) employees.

22. The Property is bordered on the north and east by other lands which are devoted to agricultural use.

23. New Holland Borough is located to the north of the property.

24. The Property is bordered on the west by Tyson Foods, an industrial use.

(Board's Findings of Fact Nos. 11–15 and 17–24, R.R. 127–28a.)

Weighing the testimony and evidence presented, the Board had to consider whether the Landowners merited a variance from the uses permitted in the Township's rural districts. At issue is Section 701 of the Zoning Ordinance of Earl Township, which in pertinent part, provides as follows:

Section 701. PERMITTED USES

1. Farm buildings, farming and agricultural use, provided that any building used for the keeping or raising of livestock or poultry shall be located not less than one hundred (100) feet from any street or other property line.

2. Single family detached dwellings.

3. Woodland or game preserve, wildlife sanctuary, or other conservation purpose.

4. Township use, park, playground or similar *non-commercial recreational area owned and operated by a public or private non-profit agency;* school; church; cemetery. . . .

(Section 701 of the Zoning Ordinance, R.R. 128a) (emphasis added).

The Board granted the variance, concluding as follows:

2. Section 701(4) of the Zoning Ordinance creates an irrational distinction between profit and non-profit entities which is unrelated to the actual use of the land and which does not serve a legitimate zoning purpose.

---

1. (Board's Finding of Fact No. 16, R.R. 127a.)

2. (Exhibit 1 to February 15, 1994 Hearing Transcript, R.R. 120–21a.)

3. Applicant[s] [are] entitled to a reasonable use of the property.

4. An application of the literal terms of the Zoning Ordinance creates an unusual hardship on the Property which is unrelated to a legitimate zoning purpose which hardship was not created by the Applicant.

5. The granting of the requested variance will not alter the essential character of the neighborhood or district, nor substantially impair the appropriate use or development of adjacent property nor be detrimental to the public welfare since the land will remain primarily open space.

6. The variance, as authorized, represents the minimum variance that will afford relief.

(Board's Conclusions of Law Nos. 2–6, R.R. 130–31a.)

The trial court reversed the Board's grant of the variance, finding that the Board had improperly substituted its judgment for that of the township supervisors by rejecting the distinctions set forth in Section 701(4) of the Ordinance. The trial court concluded that Landowners should have petitioned the supervisors for either a rezoning or an amendment to the Zoning Ordinance. Landowners filed a timely appeal of the trial court's decision with this Court.

As noted, the primary issue for our review is whether the Board erred in determining that Landowners could operate a for-profit golf driving range in a rural district where the Zoning Ordinance allows recreational uses only where owned and operated by non-profit agencies. Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *McClimans v. Board of Supervisors of Shenango Township*, 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987).

Objector Frank Ludwig argues that the Board usurped the legislative function of the township supervisors by questioning the rationality of the profit/non-profit distinction. Thus, he contends that the Board was under an obligation to apply Section 701(4) of the Zoning Ordinance as written.

Without question, the promulgation of a zoning ordinance is a legislative act. Also, in light of the legislative nature of zoning ordinances, our Supreme Court has held that "zoning boards and the courts must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." *Kline Zoning Case*, 395 Pa. 122, 125, 148 A.2d 915, 916 (1959).

In promulgating a zoning ordinance, however, ordinance legislators are to provide for uniform uses in respective zoning districts pursuant to Section 605 of the Pennsylvania Municipalities Planning Code (MPC) [3], which, in pertinent part, provides as follows:

Where zoning districts are created, all provisions shall be uniform for each class of uses or structures, within each district, except that additional classifications may be made within any district [except for purposes not relevant here].

Thus, although zoning classifications are, in large part, within the respective legislative body's judgment, courts may interfere in the rare cases where it is obvious that a classification lacks a substantial relationship to public health, safety, morals or general welfare. *Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514 (1965). Accordingly, our question here is whether the Board erred in finding that the profit/non-profit distinction is unrelated to the actual use of the land and does not serve a legitimate zoning purpose.

Earl Township in Section 701(4) decided that non-profit entities should be treated differently from profit entities. Specifically, for-profit entities are forbidden from engaging in recreational uses in rural districts that would otherwise be permissible if they were non-profit entities.

It is well established that, "if a use is permitted, a municipality may not regulate the manner of ownership of the legal estate."

---

3. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10605.

*County of Fayette v. Cossell*, 60 Pa.Commonwealth Ct. 202, 204, 430 A.2d 1226, 1228 (1981) (holding that even a use established while trespassing can constitute a nonconforming use because zoning status is unaffected by disputes between private parties). *See also Goldstein v. Upper Merion Township*, 44 Pa.Commonwealth Ct. 201, 403 A.2d 211 (1979) (holding that an approved use does not become unapproved merely because a lessee exercises his option to purchase, thus changing the property's method of ownership); *Kaufman and Broad, Inc. v. Board of Supervisors of West Whiteland Township*, 20 Pa.Commonwealth Ct. 116, 340 A.2d 909 (1975) (holding that a condominium is a method of ownership, not a property use, and thus is not a proper zoning subject).

Here, we are compelled to conclude that, in making the distinction between profit and non-profit owners, the Township erroneously attempted to regulate ownership and not merely permissible recreational uses for rurally zoned property. There is simply no evidence of record to indicate any logical basis for the profit/non-profit ownership distinction. *Geiger v. Zoning Hearing Board of the Township of North Whitehall*, 510 Pa. 231, 507 A.2d 361 (1986) (holding that there was no logical basis for an ordinance distinguishing mobile homes manufactured in one complete section from dwellings constructed on site or manufactured in two or more sections); *Mahony v. Township of Hampton*, 539 Pa. 193, ——, 651 A.2d 525, 527 (1994) (holding that there was no valid distinction between public and private gas wells). *See also* Ryan, *Pennsylvania Zoning Law and Practice*, § 3.3.20, Power to Regulate the Form of Land Ownership.

Objector cites *Kensington South Neighborhood Advisory Council v. Zoning Board of Adjustment of Philadelphia*, 80 Pa.Commonwealth Ct. 546, 471 A.2d 1317 (1984) for the proposition that zoning boards are bound to respect legislative distinctions made by ordinance drafters. We find, however, that *Kensington* is distinguishable from the case before us.

In *Kensington*, we considered a zoning ordinance for a commercial district which distinguished between a retail produce operation, which was permitted, and wholesale distribution of fresh produce, which was prohibited. The City's Zoning Board granted a variance to the applicant seeking to operate prohibited wholesale operations on the basis that the distinction between wholesale and retail operations was de minimis. The trial court reversed, concluding that the applicant had failed to demonstrate unnecessary hardship in support of its variance application.

We affirmed the trial court's determination, finding that application of the de minimis rule "would subvert the legislative judgment reflected in the [City's] Code that uses involving sales at retail on the one hand and wholesale on the other are to be treated differently for zoning purposes." *Id.* at 550, 471 A.2d at 1319–20. Further, we stated that "for the Board to rule that the distinction between retail and wholesale operations is 'de minimis' and may be ignored in considering variance applications, is to disregard the legislative judgment that such a distinction is significant to zoning in Philadelphia." *Id.* at 551, 471 A.2d at 1320. Thus, we concluded that the Board erred in permitting a variation from the City Code's use provisions without a showing of unnecessary hardship.

*Kensington* is distinguishable from the case before us because in *Kensington*, the classification at issue was the nature of the use, wholesale or retail operation, and not the nature of the ownership, profit or non-profit entity. Regardless of who owned the wholesale operations, the City forbade that use in commercial districts. In the case before us, the Township is regulating the method of ownership, profit or non-profit, and not the recreational uses that may be at issue.

We conclude that the regulation here creates a non-uniform class under Section 605 of the MPC, 53 P.S. § 10605, and therefore reverse the order of the trial court.

### ORDER

AND NOW, this 27th day of April, 1995, the order of the Court of Common Pleas of

Lancaster County, dated August 16, 1994, is hereby reversed.

SMITH, J., dissents.

