# Gross v. New Britain Township

*John P. Koopman,* for appellants.
*John B. Rice,* for appellee.

CEPPARULO, *J.,* June 28, 2005—

## I. INTRODUCTION

Susan Gross and Robert J. Kolmus (appellants) have appealed from the December 8, 2003 decision of the New Britain Township Board of Supervisors denying appellant's curative amendment challenge, which was filed on November 13, 2000. This court held a Bucks County Rule of Civil Procedure *27 conference on August 19, 2004, and oral argument was held thereafter on November 22, 2004. This court then reviewed the briefs submitted by each party as well as the voluminous record created during the hearings held before the New Britain Township Board of Supervisors on appellants' curative amendment challenge. This opinion is offered to explain the court's order dated June 28, 2005.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Appellants are the owners of two adjoining tracts of land comprised of approximately 37 acres located on Old Limekiln Road in New Britain Township, Bucks County, Pennsylvania. The property is located in the RA-1 and RA-2 Rural Agricultural Zoning Districts. The property has been used for agricultural purposes—specifically, for

growing apples and grapes—by appellant Gross since 1967. In the early 1980s, appellants expanded the use of the property by opening the Peace Valley Winery, which remains in operation today. The board found that "[v]irtually the entire area of the subject tract consists of Class I and Class II soils" which was described by the township's expert, Michael Frank, as "a uniquely high proportion of the site's soils." (Adjudication, 12/08/2003, p. 11.)[1] Further, the board found, based on testimony by Mr. Frank, that the area in which the property is located is "very rural, with numerous cultivated fields, open farm fields, and dispersed residential development." (Adjudication, 12/08/2003, p. 11.)

On January 3, 2000, the New Britain Township Board of Supervisors adopted Resolution no. 2000-02 invoking the procedure for municipal curative amendments as set forth in section 609.2 of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §10609.2. Under section 609.2 of the MPC, a municipality has 180 days from the date of adoption of a Municipal Curative Amendment Resolution during which no curative amendment filed by a landowner will be considered. Resolution 2000-02 declared that the township's zoning ordinance was potentially invalid because "[t]he current minimum lot sizes in the RA-1, RA-2 and CR zoning districts for residential housing may not be justified" and because "[t]he Natural Resource Protection Standards and dimensional requirements of the zoning ordinance may not adequately preserve prime agriculture, farmland and existing natural resources considering topography, soil

---

1. Class I, II and III soils are defined as "prime agricultural land" under section 107 of the Pennsylvania Municipalities Planning Code. 53 P.S. §10107.

type and classification, and present use." (See tab 36 in return of cert. for copy of Resolution 2000-02.) Therefore, the Resolution directed the New Britain Township Planning Commission "to prepare and consider a curative amendment amending the New Britain Township Zoning Ordinance so as to cure the declared potential invalidity."

On June 12, 2000, the board held a hearing to consider an amendment that would reduce the minimum lot sizes in the RA-1 and RA-2, as well as the CR zoning districts from five acres per dwelling unit to one and one-half acres per dwelling unit. No amendment was adopted on that date. On July 3, 2000, the 180-day statutory period during which the municipality may refrain from considering landowner curative amendments expired. The township subsequently referred to a professional staff the question of amending the zoning ordinance to reflect a change in lot size. The professional staff proposed an ordinance that incorporated agricultural soil protection, a minimum lot size of 1.38 acres and the transfer of development rights between certain districts. The first two public hearings on the proposed ordinance were held on August 14, 2000 and September 27, 2000. Appellants attended both of these hearings and commented on the various drafts of the ordinance. Appellants filed a landowner curative amendment challenge on November 13, 2000.

The third and final public hearing on the proposed ordinance was held on December 20, 2000. At this hearing, the board amended the township's zoning ordinance by adopting Ordinance 2000-12-02. Ordinance 2000-12-02 declares that the RA-1 zoning district "is envisioned as an area which will permit low density residential development in order to preserve agricultural soils, exist-

ing groundwater supplies and other natural resources and to maintain the current semi-rural character of the community." Ordinance 2000-12-02 further states that the purpose of the RA-2 zoning district "is to preserve agricultural soils and other natural resources and character of the community by permitting only low density development in the currently semi-rural areas of the township." To fulfill these purposes, Ordinance 2000-12-02 imposes various restrictions and requirements on land located in the CR, RA-1 and RA-2 zoning districts.

In both the RA-1 and RA-2 districts,[2] a landowner's ability to subdivide or develop his tract of land is restricted based on the size of the tract at the time of the adoption of Ordinance 2000-12-02. Under the restrictions and requirements placed on land in the RA-1 and RA-2 districts by Ordinance 2000-12-02 that apply to "all sites containing 10 acres or more," the minimum lot size for principal and accessory uses is 1.9 acres in both districts.[3] In both districts, no more than 50 percent of Class I, II or III soils may be developed except for agricultural uses, excluding commercial kennels and animal hospitals.[4]

---

2. Testimony was taken indicating that the difference between the RA-1 and RA-2 districts as far as permitted uses is that cluster homes are permitted in RA-2, while RA-1 allows only single family dwellings. (N.T., 05/07/2001 at 482-83.)

3. Lots containing less than 10 acres are subject to a minimum lot size of two acres under Ordinance 2000-12-02.

4. The ordinance defines agricultural soils as follows: "Those soils that have been designated by the Natural Resource Conservation Service of the U.S. Department of Agriculture as Capability Class I Land, Capability Class II Land and Capability Class III Land. These soils are best suited for producing food, feed, forage, fiber and oilseed crops, and also available for these uses based upon their soil quality, growing season and moisture supply needed to produce high yields of crops.

For the land that is available for development after setting aside at least 50 percent of agricultural soils, both districts have identical requirements regarding the depth and width of lots, the maximum building coverage, the maximum impervious surface ratio and the minimum front, side and rear yard measurements. In both districts, the minimum lot size is required to be expanded so that each lot will contain a contiguous unrestricted area of one acre, which may not contain watercourses, flood-plains, floodplain soils, wetlands, lakes, ponds, or zones 1 and 2 of a riparian buffer area.[5] In addition, the con-

---

For purposes of this ordinance, the 1975 Soil Survey of Bucks and Philadelphia counties shall be utilized in determining soil classifications until such time as the USDA finally adopts new and revised soil criteria, unless otherwise approved by the Board of Supervisors."

5. The ordinance contains the following additional definitions:

*Bankfull flow or level:* "The discharge that just fills the water channel to the top of its banks and at a point where the water begins to overflow onto a floodplain. Bankfull discharge is a relatively frequent event with a return rate of 1.0 year."

*Riparian buffer:* "An area adjoining surface water bodies including lakes, ponds and watercourses. These areas intercept surface runoff, subsurface flow and deeper groundwater flows from upland sources which remove and buffer the effects of associated nutrients, sediment, organic matter, pesticides, or other pollutants prior to entry into surface waters or groundwater recharge areas."

*Watercourse:* "Any natural or artificial stream, river, creek or canal in which water flows in a definite direction or course, either continuously or intermittently, and has a definite channel, bed and banks, and includes any area adjacent thereto subject to inundation by reason of overflow or flood water."

*Wetlands margin:* "A transitional area extending from the outer limits of the wetlands, as defined in this ordinance. Wetlands margins serve to filter pollutants, reduce stormwater velocities, provide for floodwater storage, provide wildlife habitat (which may include endangered or threatened species), facilitate groundwater recharge, and allow for slight variations of the wetlands boundary seasonally or over

tiguous one-acre area may not contain more than 40 percent of slopes of eight to 15 percent grade, more than 30 percent of slopes of 15 to 20 percent grade, more than 25 percent of slopes of 25 percent or steeper grade, more than 20 percent of forest areas, or more than 20 percent of wetland margin areas. Further, in both districts, no more than 50 percent of Class I, II or III soils may be developed except for agricultural uses, excluding commercial kennels and animal hospitals.

The board held hearings on appellants' landowner curative amendment challenge between January 24, 2001 and February 24, 2003.[6] The board issued a decision denying appellant's challenge on December 8, 2003. Appellants appeal from this decision. A Rule *27 conference was held by this court on August 19, 2004, after which both sides submitted briefs, and oral argument was held on November 22, 2004.

## III. ISSUES

The issues raised by appellants before this court are: (1) whether the five-acre minimum lot size and corresponding density regulations in the RA-1 and RA-2 zoning districts of New Britain Township are constitutionally valid; (2) whether the pending ordinance doctrine is applicable to appellants' curative amendment challenge;

---

time. For the purpose of this ordinance, the wetlands margin shall extend 25 feet from the wetland boundary."

6. Incidentally, it was during the course of these hearings (subsequent to the subject of this curative) that the township adopted Ordinance no. 2003-04-02, which rezoned the subject properties to a WS (Watershed) Zoning District in an effort to preserve agricultural soils and protect the Lake Galena water supply, which is used for both recreation and by the North Penn Water Authority.

and (3) assuming that the pending ordinance doctrine applies, the constitutional validity of the ordinance that was eventually adopted by the township (Ordinance 2000-12-02) to replace the five-acre minimum lot size ordinance in the RA-1 and RA-2 zoning districts of New Britain Township.

## IV. ANALYSIS OF ISSUES

### A. *Constitutionality of the Five-Acre Minimum Lot Size*

Appellants first allege that the five-acre minimum lot size and corresponding density regulations in the RA-1 and RA-2 zoning districts of New Britain Township are invalid. To reach this issue, this court would need to find that the pending ordinance doctrine does not apply in this case and that appellants' curative amendment challenge was therefore properly filed against the five-acre ordinance. For reasons explained below, we find that the pending ordinance rule does apply in this case and that the curative amendment filed by appellants on November 13, 2000, did not properly challenge the five-acre minimum lot size and corresponding requirements that were once in place in New Britain Township. Therefore, we do not reach the validity of the five-acre minimum lot size and its corresponding density regulations.

### B. *Applicability of the Pending Ordinance Doctrine*

Appellants contend that the pending ordinance doctrine does not provide New Britain Township with a defense to appellants' curative amendment challenge because New Britain had previously declared the five-acre

ordinance potentially invalid and then failed to adopt a new ordinance within the 180-day period provided for in section 609.2 of the MPC. Appellants argue that "[w]here a municipality ... allows the six-month moratorium period under the Code to expire without the adoption of a curative amendment, the township should thereafter be precluded from taking advantage of the benefits of the common-law pending ordinance doctrine ...." (Brief in support of appeal of Susan Gross and Robert J. Kolmus at 42.) Appellants contend that "the equitable basis for the application of the pending ordinance doctrine no longer exists" when a municipality has taken advantage of the 180-day moratorium provided in the MPC.

A review of applicable case law reveals no definitive statement that a municipality may not claim the benefit of the pending ordinance doctrine after having exhausted the moratorium period provided in section 609.2 of the MPC. In *Urey v. Zoning Hearing Board of the City of Hermitage, PA,* 806 A.2d 502, 506 (Pa. Commw. 2002), the court recognized that "[t]he pending ordinance doctrine was judicially created" and that cases cited by *Urey* regarding that doctrine "neither discuss nor apply the statutory authority of section 609.2 of the MPC." Because the ordinance at issue in *Urey* was adopted within the 180-day window provided in the MPC, the court did not discuss the potential application of the pending ordinance doctrine in that case. Thus, the court in *Urey* suggests that the judicially created pending ordinance doctrine and the statutorily created moratorium in section 609.2 of the MPC represent two separate considerations. However, the court did not reach the question of whether both the statutory remedy and the pending ordinance doctrine can be used by a municipality to allow the mu-

nicipality to deny a landowner's petition after the expiration of the initial 180-day period provided by the MPC.

Appellant contends that case-made rules like the pending ordinance doctrine cannot prevail over a section of the MPC, citing the case of *Monumental Properties Inc. v. Board of Commissioners of the Township of Whitehall*, 11 Pa. Commw. 105, 311 A.2d 725 (1973) for this proposition. Appellants further contend that section 609.2(4), which states that "[a] municipality having utilized the procedures as set forth in clauses (1) and (2) [referring to the 180-day window] may not again utilize said procedure for a 36-month period following the date of the enactment of a curative amendment, or reaffirmation of the validity of its zoning ordinance . . .," precludes reliance on the pending ordinance doctrine by a municipality during the 36-month period described in the statute.

Indeed, *Monumental Properties Inc.* stands for the proposition that the pending ordinance doctrine cannot prevail over an MPC section that "clearly and directly" regulates the applications that are sought to be disregarded or denied on the basis of the doctrine. (See 11 Pa. Commw. at 110, 311 A.2d at 728.) In that case, the court addressed the issue of whether section 508(4) of the MPC precluded a municipality from using the pending ordinance doctrine. The court found that section 508(4) was both clear and direct in its regulation of the applications that Whitehall Township was seeking to deny, and that the township was therefore precluded from relying on the judicially created pending ordinance doctrine. The text of section 508(4) provides:

"From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in

the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed . . . ." 53 P.S. §10508(4).

Because the relevant statutory provision explicitly declares that no change in zoning law subsequent to the filing of an application for approval of a plat shall affect the rights of the applicant adversely, the court held that the township could not rely on the judicially created pending ordinance doctrine because the doctrine is contrary to the express statutory provisions.

In the case sub judice, section 508 of the MPC is not relevant to our inquiry because that section governs applications for plat approval. Rather, the relevant section is section 609.2(4), which governs applications for curative amendments. Section 609.2(4) contains no language comparable to that found in section 508(4) and discussed in the *Monumental Properties* case. While section 508(4) states that a municipality may not deny an application for plat approval solely on the basis of a change in zoning that occurred subsequent to the filing of the application, section 609.2 explicitly provides that a township *may* deny a petition for curative amendment solely on the basis that the township has declared an ordinance invalid and is seeking to cure the invalidity. The language limiting application of section 609.2(4) provides only that a municipality may not deny petitions on the basis of the statutory provisions for more than 180 days

after the declaration that the ordinance is invalid, and the township cannot rely on the 180-day moratorium more than once within a 36-month time period. The statute is silent as to whether the municipality may utilize other applicable doctrines to deny a landowner's petition within the 36-month time period. Therefore, section 609.2(4) does not clearly and directly govern the power of a municipality to deny a landowner's petition after expiration of the initial 180-day window so as to preclude application of the pending ordinance doctrine. Because no case or statutory provision prevents a township from relying on both the statutory moratorium and the pending ordinance doctrine, we find that the township is not so precluded.

To say that a township is theoretically able to utilize both section 609.2 of the MPC and the judicially created pending ordinance doctrine is not to say that the township may do so without limitation. Courts have carefully defined the circumstances in which the pending ordinance doctrine applies. In *Boron Oil Company v. Kimple,* 445 Pa. 327, 284 A.2d 744 (1971), the court addressed the limitations on the application of the pending ordinance doctrine. Appellant in that case argued that, once a municipality has resolved to consider a particular scheme of rezoning and has advertised this intention to the public, one or more years can pass before final action by the municipality, creating an undue restraint on the landowner's rights to his or her land. The court determined that the task at hand is "to balance the interest of the municipality in effecting a change in its zoning laws free from the perpetuation of nonconforming uses against the interest of the individual property owner to be free from lengthy restraints upon the use of his property." *Id.*

at 332, 284 A.2d at 747. The court concluded that the interests of the municipality were "paramount and of greater concern than any regrettable but unavoidable harm suffered by an individual land owner," but also cautioned that "our present decision is not to be construed in any sense as granting a license to a municipality to use the pendency of a zoning ordinance as a device to impose either a general or selective moratorium on local land development." *Id.* The court ultimately held that "a building permit may be properly refused in situations such as the one at bar *Only* [sic] when the municipality acts initially in good faith to achieve permissible ends and thereafter proceeds with reasonable dispatch in considering the proposed zoning." *Id.* at 333, 284 A.2d at 748. (emphasis in original)

We have said that no law specifically precludes the use of the pending ordinance doctrine following the expiration of the 180-day period prescribed in section 609.2 of the MPC. The danger of allowing a municipality to rely on the pending ordinance doctrine after it has exhausted the 180-day statutory window provided in section 609.2(4) is similar to the danger addressed by the court in *Boron*—that a municipality could utilize the doctrine to excessively prolong consideration of rezoning and thereby prejudice landowners. Safeguarding against this possibility, courts have required that a municipality act in good faith and with reasonable dispatch to achieve permissible ends. See *Boron* at 333, 284 A.2d at 748. Courts have further required a clear intention on the part of the municipality to consider a new ordinance and have required this intention to be advertised to the public. "The events preceding the adoption of an ordinance must be examined whenever the issue of pendency

is raised. An ordinance is pending when the governing body 'has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning.' " *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 226, 328 A.2d 464, 467 (1974). In *Boron,* the court found that an ordinance is pending where the municipality "proposes a new zoning ordinance, makes the proposal open to public inspection, and advertises that the proposal will be discussed at a forthcoming public meeting." 445 Pa. Super. at 331, 284 A.2d at 747.

Based on the rules set forth in *Boron* and *Casey,* in order for the pending ordinance doctrine to offer a municipality protection from landowner challenges to zoning ordinances, the municipality must (1) have resolved to consider an ordinance which would impose a particular scheme of zoning; (2) be acting in good faith to achieve permissible ends; (3) have advertised its intention to discuss the new zoning at a forthcoming meeting; (4) have made the proposed ordinance available to the public for inspection; and (5) proceed with reasonable dispatch in considering the new ordinance. Therefore, our inquiry becomes whether New Britain Township complied with all of these requirements with respect to zoning ordinances at issue in the case sub judice. If so, then the pending ordinance doctrine offers protection from appellants' curative amendment challenge. If not, no such protection exists.

Appellants first allege that the board did not resolve to consider an ordinance that would impose a particular *scheme* of rezoning. The minutes of the board meeting of January 3, 2000, contain a notation of the adoption of Resolution no. 2000-02 "to address deficiencies in the

zoning ordinance." (Board of Supervisors meeting minutes, 01/03/2000.) Appellants object that this Resolution "only declared the possibility of invalidity of the township ordinance and did not, in any way, determine or address what form of ordinance the township was intending to adopt to cure the invalidity, if any, and if they determined to cure same. (Brief in support of appeal of Susan Gross and Robert J. Kolmus at 44.) While this may be true, the township began to hold hearings on June 12, 2000, well before appellants filed their curative amendment challenge, to consider reducing the minimum lot size from five to one and one-half acres in the RA-1 and RA-2 zoning districts. Therefore, the intention of the board to consider revising the five-acre minimum lot size was more than clearly expressed by the time appellants filed their challenge. In fact, the board had progressed beyond the mere intention to rezone and had begun to hold hearings on the proposed ordinance that would replace the five-acre minimum lot requirement. We therefore find that the board had adequately expressed a resolve to consider an ordinance that would impose something other than a five-acre minimum lot size in the RA-1 and RA-2 zoning districts of New Britain Township.[7]

Appellants next contend that the township was not acting in good faith or to achieve permissible ends. In *Bo-*

---

7. It bears repeating that for 11 of the 12 months during which New Britain was considering a method of reducing the minimum lot size in the RA-1 and RA-2 districts, there was *No* curative amendment yet filed seeking to "cure" any portion of the New Britain Zoning Ordinance. Indeed, appellants did not file their curative amendment until November 13, 2000, and the ordinance that we have held to be pending was adopted at the next public hearing, which was held on December 20, 2000.

*ron,* the court noted that there was no evidence that the new ordinance being considered by the municipality was directed specifically against the appellant's property. 445 Pa. Super. at 330-31, 284 A.2d at 747. Furthermore, the municipality had advertised a public meeting two weeks before receiving the appellant's application and the proposed ordinance was available for public inspection one week before the municipality received the appellant's application. *Id.* The court found that the ordinance in *Boron* was pending at the time that the appellant filed his building permit request, but cautioned that the holding in *Boron* was to be applied only "in cases like the one at bar," where there was no evidence that the municipality acted to enjoin action by the appellant specifically or where the municipality acted to "declare 'time out' and stop all development." *Id.* at 333, 284 A.2d at 747-48.

In the case sub judice, there are no facts to indicate bad faith on the part of the township. In fact, there are several facts that tend to show the good faith efforts of the township to modify its zoning scheme. First, there is no evidence that the actions of the township were directed specifically toward appellants. Second, New Britain had been considering changing the ordinance regarding minimum lot size since, at the latest, January 3, 2000. Appellants' curative amendment challenge was not filed until more than 10 months later, on November 13, 2000. Finally, the township did more than merely make the proposed ordinance available for public inspection—the township held three public hearings on June 12, August 14 and September 27, 2000, *before* appellants even filed the curative amendment challenge. Furthermore, appellants actively participated in at least the last two of those hearings. The record contains a packet of materials sub-

mitted by Susan Gross and entitled "Statement Submitted to the New Britain Township Board of Supervisors at the Public Hearing September 27, 2000," which is marked with a notation that the packet includes "previously submitted material." All of this evidence leads to the conclusion that the township was considering a change to the minimum lot size well before the filing of a curative amendment challenge by appellants and that appellants were active participants in public hearings held by the township to address the minimum lot size issues. There is no evidence to suggest that the township acted in bad faith or to achieve an impermissible end, such as to stop development by appellants specifically, or to stop all development in New Britain Township.[8] Therefore, we find that the township acted in good faith to achieve permissible ends throughout the entire process leading up to and eventually adopting Ordinance 2000-12-02.

Appellants next allege that the township did not properly advertise its intention to hold a hearing on the ordinance that was ultimately adopted because the advertised ordinance was materially different from Ordinance 2000-12-2. Under the pending ordinance doctrine, an ordinance is pending when it has been publicly advertised prior to the date of challenge and is ultimately enacted without substantial change." *Appeal of Board of Supervisors of Solebury Township, Bucks County,* 49 Pa. Commw. 267,

---

8. Evidence did show that the township supervisors and solicitor made comments indicating that the goal of the township was to discourage development as much as possible. However, the comments quoted in appellants' brief in all instances reflect a desire that any action on the part of the township comply with the law. Therefore, we do not find an impermissible goal or bad faith on the basis of these comments.

274, 412 A.2d 163, 166 (1980). (citations omitted) (footnote omitted) In *FPA Corporation Appeal,* 25 Pa. Commw. 221, 225, 360 A.2d 851, 854 (1976), the court found that an ordinance was not legally pending because the municipality had "indefinitely tabled" consideration of the amendment and because the ordinance that was eventually adopted was "materially different" from the proposed ordinance. Appellants argue that the facts of this case are sufficiently similar to the facts of *FPA* to warrant the same outcome. We disagree.

Appellants contend that a statement at the end of the September 27, 2000 meeting that the next meeting would take place upon "further notice" indicates that the board had indefinitely tabled the proposed ordinance. (Brief in support of appeal of Susan Gross and Robert J. Kolmus at 48.) In *FPA,* the court makes clear that the proposed amendment had been "indefinitely tabled." 25 Pa. Commw. at 225, 360 A.2d at 853-54. In appellants' case, there is no such clarity as to the action of the board. An examination of the board's meeting minutes from September 27, 2000, reveals that further study of the agricultural soils portion of the proposed amendment was needed. Therefore, the board continued the hearing until further notice. At no point was any indication given that consideration of the amendment was tabled or suspended. Therefore, we find that the ordinance in the case sub judice was not "tabled indefinitely" because the supervisors were not sure of the completion date for the soil studies upon which the ordinance would be based and, because of the strict requirements with regard to public notice of the next hearing, all that the board could do was continue the hearing until further notice.

Appellants also argue that the ordinance that was eventually adopted is *materially* different from the ordinance that was advertised and considered at the initial hearings. The ordinance adopted on December 20, 2000 (Ordinance 2000-12-02) provided for protection of agricultural soils and a minimum lot size of 1.9 acres. The ordinance proposed at the August 14, 2000 meeting provided for protection of agricultural soils and a minimum lot size of 1.38 acres. Both of these ordinances dealt with exactly the same areas of zoning concern—protection of agricultural soils and minimum lot size. The fact that the minimum lot size was adjusted does not make the proposed ordinance "materially" different from the one that was eventually adopted. In *FPA,* the material difference was far more evident—the municipality resolved to consider an amendment to allow a townhouse-apartment home zone, tabled consideration of that amendment indefinitely, and eventually adopted an ordinance that was "admittedly materially different" from the amendment concerning townhouses and apartment homes. 25 Pa. Commw. at 225, 360 A.2d at 853-54. Here, there is no admission that the adopted amendment is materially different from the proposed amendment and we specifically find that the mere adjustment of the minimum lot size does not represent a material difference between the two proposed ordinances.

Appellants next allege that the public was not invited to inspect the ordinance that was eventually adopted until December 2000. The right to public inspection of the ordinance that was set forth in *Boron* is simply the right to inspect the *proposed* ordinance and the right to notice that discussion about the proposed ordinance will take place within a reasonable time. See 445 Pa. Super. at

331, 284 A.2d at 747. Because the ordinance is, by its very terms, proposed and open to discussion, it is likely that the ordinance eventually adopted will differ in some respects from the original proposed ordinance. As previously noted, the important distinction is that the difference not be material. Here, the public was given an opportunity to inspect and comment upon the proposed ordinance well before appellants filed their curative amendment challenge. Two public hearings were held on August 14 and September 27, 2000. Appellants attended these meetings, commented on the proposal and actually submitted materials. Therefore, appellants and other members of the public were afforded adequate opportunity to review the proposed ordinance. The fact that the ordinance was adjusted in certain non-material respects before final adoption does not vitiate the opportunity for public inspection that was afforded during the many stages of consideration of the ordinance.

Appellants next allege that New Britain Township did not act with reasonable dispatch in attempting to cure the perceived invalidity of the five-acre minimum lot size ordinance. While the final adoption of the new ordinance did not occur until nearly one year after the township first adopted the resolution to consider an amendment to the zoning ordinance, the township was actively considering the amendments during the entire period. When, upon expiration of the 180-day moratorium, it became apparent that the township was going to be unable to finalize a new ordinance, the township promptly referred the matter to a professional committee. The professional committee fashioned a new proposed ordinance and held two public hearings on this proposal before appellants

filed their curative amendment challenge.[9] Within 90 days of the second hearing, the new ordinance was adopted. The township therefore acted with reasonable expediency after it became apparent that no new ordinance could be fashioned within 180 days from the date of the Resolution to consider a zoning change. Because appellants have not shown that the township failed to comply with an aspect of the pending ordinance doctrine, the doctrine applies to allow the township to avoid considering appellants' curative amendment challenge under the old zoning ordinance requiring five-acre minimum lot sizes.

### C. *Constitutionality of Ordinance 2000-12-02*

Appellants' final argument is that the curative amendment effectively challenged the constitutionality of the ordinance that was eventually adopted. Appellants contend that they have proven the invalidity of the newly adopted ordinance and are entitled to approval of their curative amendment plan by this court or, in the alternative, are entitled to remand of this matter to the board, with instructions for the board to approve appellants' curative amendment plan. Once a validly pending provision is adopted, "property owners are precluded from pursuing any zoning claim predicated on the substantive invalidity of a zoning ordinance that may have accrued

---

9. This court finds it curious that appellants would complain of the township acting in a manner that was not expedient. Appellants themselves attended meetings, discussed proposed ordinances and submitted materials for several months before filing their curative amendment challenge. Appellants waited until 10 months after the 180-day moratorium began and five months after the township began additional hearings on proposed ordinances to file their curative amendment.

at any time following 'the date of the declaration and proposal.'" *Urey,* 806 A.2d at 507. If a curative provision has been determined to be pending at the time that a landowner attacks the validity of a zoning ordinance, "then the unconstitutionality of the unamended ordinance would not be relevant to our decision as our consideration would then be focused on the ordinance in its amended form." *Casey,* 459 Pa. at 225, 328 A.2d at 466. In the case sub judice, we have found that the pending ordinance doctrine prevents consideration of appellants' attack on the constitutionality of the five-acre minimum lot requirement. Thus, our focus shifts to determining whether appellants have shown that the amended ordinance is unconstitutional.

In light of the above determination, this court's role is limited to reviewing the record, including all of the testimony and the written decision of the board, to determine solely whether the board abused its discretion or erred as a matter of law. *In re Petition of Dolington Land Group,* 576 Pa. 519, 526, 839 A.2d 1021, 1026 (2003) (citing *C & M Developers Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 820 A.2d 143 (2002)). "Under the traditional standard applied when determining the validity of zoning ordinances, a zoning ordinance must be presumed constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve." *C & M Developers Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. at 14, 820 A.2d 143, 150-51 (2002). "Among other reasons, an ordinance will be found to be unreasonable and not substantially related to a police power purpose if it is shown to be unduly restrictive or exclusionary." *Id.* at

15, 820 A.2d at 151. "Moreover, in reviewing an ordinance to determine its validity, courts must generally employ a 'substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power.' " *Id.* (citation omitted)

In *Mahony v. Township of Hampton,* 539 Pa. 193, 196, 651 A.2d 525, 527 (1994), the court explained that "meaningful inquiry," in evaluating the constitutionality of a challenged zoning restriction, requires reference to the municipal objectives sought to be accomplished. "A law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and *the means which it employs must have a real and substantial relation to the objects sought to be attained." Id.* (quoting *Lutz v. Amour,* 395 Pa. 576, 578-79, 151 A.2d 108, 110 (1959) (emphasis in original)).[10]

The MPC expressly requires that each municipal zoning ordinance shall be designed "[t]o preserve prime agriculture and farmland considering topography, soil type

---

10. In *In re Appeal of Realen Valley Forge Greenes Associates,* 799 A.2d 938 (Pa. Commw. 2002), the Commonwealth Court found the "state of mind" of the supervisors irrelevant to the ultimate determination of validity. The legislation must stand or fall on its own terms. *In re Appeal of Apgar,* 661 A.2d 445, 447 (Pa. Commw. 1995) (citing *Klein v. Council of the City of Pittsburgh,* 164 Pa. Commw. 521, 643 A.2d 1107 (1994). Thus, "the circumstances and declarations of the township as to their intent regarding the adoption of this ordinance," while they may be relevant to the inquiry as to whether the township acted in good faith under the requirements of the pending ordinance doctrine, are *not* relevant to the inquiry as to the constitutionality of Ordinance 2000-12-02, as appellants suggest in their brief. (See appellants' brief, page 53.)

and classification, and present use." 53 P.S. §10604(3). Further, the MPC authorizes municipalities to enact zoning ordinances regulating "protection and preservation of . . . agricultural land and activities." 53 P.S. §10603(b)(5). However, "[w]hile the township undoubtedly has an interest in preserving its agricultural lands, that interest does not completely outweigh a landowner's right to use his property as he sees fit." *Id.* at 156. Therefore, we must examine the reasonableness of the zoning protection afforded by Ordinance 2000-12-02 in light of the restriction the ordinance imposes on appellants' right to use their land.

Appellants contend that Ordinance 2000-12-02 unreasonably restricts the property rights of appellants by requiring the preservation of agricultural soils and by limiting development on the remaining land to minimum lot sizes of 1.9 acres with set-asides for certain land features. Ordinance 2000-12-02 states that the purpose of the RA-1 zoning district is to "permit low density residential development in order to preserve agricultural soils, existing groundwater supplies and other natural resources and to maintain the current semi-rural character of the community." (Ordinance 2000-12-02, section 10.) In furtherance of this purpose, the ordinance requires a minimum lot size of 1.9 acres with a contiguous unrestricted area of one acre that may not contain watercourses, floodplains, floodplain soils, wetlands, lakes, ponds or zones 1 and 2 of a riparian buffer area. (Ordinance 2000-12-02, section 11.) The ordinance further provides that no more than 50 percent of land classified as Class I, II or III agricultural soils may be developed except for agricultural uses. (Ordinance 2000-12-02, section 11.) The ordinance provides identical restrictions

for land located in the RA-2 zoning district while also allowing for construction of cluster homes. (Ordinance 2000-12-02, section 15.)

Appellants argue that the minimum lot size of 1.9 acres is unconstitutional because other courts have found smaller lot sizes unconstitutional, the lot size is not substantially related to the township's interest in preserving agricultural lands, and the minimum lot size was arbitrarily chosen by the township. Appellants attempt to bolster this argument by citing *C & M Developers Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 820 A.2d 143 (2002), wherein the court found a minimum lot size requirement of one acre invalid. However, it is well settled that "[a]ny minimum acreage requirement is not unconstitutional per se; rather, its constitutionality must be determined on a case-by-case basis under a different set of facts and circumstances." *McGonigle v. Lower Heidelberg Township Zoning Hearing Board*, 2004 WL 2101735 at *4 (Pa. Commw. 2004).

"In determining the constitutionality of the minimum lot size requirement for the agricultural preservation zoning district, the landowner's interest in the unfettered use of his or her property must be balanced against the objectives of the community as a whole in preserving and maximizing productive farmlands." *Id.* at *4 (citing *Codorus Township v. Rodgers*, 89 Pa. Commw. 79, 492 A.2d 73 (1985)).[11] In *In re Petition of Dolington Land*

---

11. In fact, appellants have both been direct beneficiaries of the township's farmland preservation objective for many years. Appellants have utilized the land currently at issue as farmland to grow crops, including grapes. Recently, appellants have been selling wine made from grapes grown on the land.

*Group,* the Pennsylvania Supreme Court acknowledged that, in the time since the landmark decision in *Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 476 Pa. 182, 382 A.2d 105 (1977), factors which were previously of little or no concern have gained importance:

"These include but are not limited to an increased awareness of the environmental sensitivity and public value of undisturbed wetlands, floodplains, slopes, and woodlands; the growing national and statewide awareness of the true costs of sprawl and the need to implement contrary land use policies; and the growing recognition of the importance of agricultural lands and activities and of prime agricultural soils. Each of these factors acts to counterbalance to some extent the desire for intense development and each of these factors can properly serve in an appropriate municipal or multimunicipal context as a legitimate justification for the imposition of carefully tailored restrictions of the type, design, location, and intensity of permitted development." 576 Pa. 519, 537, 839 A.2d 1021, 1032 (2003).

In *C & M,* the court determined that the minimum lot size requirement, when considered with other required set-asides, was not reasonably related to the township's interest in preserving agricultural lands. The court further found that the one-acre minimum lot size was unduly restrictive when considered with all of the other set-asides required in the ordinance and that the one-acre number had been arbitrarily chosen "merely because it was considered a 'good number.'" 573 Pa. at 26, 820 A.2d at 158. However, in *Kirk v. Zoning Hearing Board of Honey Brook Township,* 713 A.2d 1226 (Pa. Commw. 1998), the court found that a minimum lot size of one or

one and one-half acres, depending on the availability of public sewer and water services, was a valid requirement intended to protect the township's prime farmland.

In *Kirk,* the landowners, who owned approximately 59 acres, challenged the validity of the minimum lot requirements. The board in *Kirk* found that the land consisted of prime agricultural soils, Classes I, II and III. The board then concluded that the larger minimum lot sizes for single family homes in the agricultural zoning district than the residential zoning districts serve the goal of preserving the prime agricultural land, and that such requirements are neither arbitrary nor unreasonable. The trial court affirmed the decision of the board, as did the Commonwealth Court on appeal. Similarly, in *Henley v. Zoning Hearing Board of West Fallowfield Township,* 155 Pa. Commw. 306, 625 A.2d 132 (1993), the court upheld the minimum lot size, stating the purpose of preserving productive agricultural lands and fostering conditions favorable to continued agricultural use in the township are directed by the MPC. Thus, while it may be true that the court in *C & M* found a one-acre requirement invalid in Bedminster Township, that holding does not mean that a similar requirement is automatically invalid in New Britain Township. Rather, this court is required to engage in an inquiry into the specific facts and circumstances of the case before us to determine the validity of the 1.9-acre minimum lot size.

While appellants have asserted that agricultural zoning is not a basis for their curative amendment, it is difficult, if not impossible, to evaluate their constitutional validity challenge, particularly the 1.9-acre minimum lot requirement, without contemporaneously considering the impact of the mandates regarding agricultural soils that

are contained in Ordinance 2000-12-02. The preservation of agricultural soils has been held to be a legitimate governmental goal, which can be implemented by zoning regulation. *Crystal Forest Associates LP v. Buckingham Township,* 872 A.2d 206 (Pa. Commw. 2005). In *C & M,* the court recognized that a 50 percent set-aside of classified agricultural soils appeared to "reasonably balance the township's interest in preserving its agricultural lands and activities with a landowner's interest in using his property as he desires, given that the regulations direct a landowner seeking to subdivide or develop his tract to set aside approximately 50 percent of the tract for agricultural purposes, yet also permit a landowner to develop or subdivide the land which remains." 573 Pa. at 23-24, 820 A.2d at 156. (footnote omitted) The court in *C & M* found further that a "portion of that remaining tract, however, contains areas not suitable for development, such as wetlands, floodplains, or steep slopes." *Id.* at 25, 820 A.2d at 157.

In the case sub judice, the board accepted testimony that appellants' tract of land is composed entirely of soils classified as Class I, II or III agricultural soils. The township's ordinance requires a set-aside of 50 percent of those soils, which must be used solely for agricultural purposes. The record reveals that appellants' tract of land contains no wetlands, floodplains, steep slopes or other geographical features that would prevent appellants from developing on any of the 50 percent of the tract that remains after the set-aside for agricultural soils. (N.T., 4/29/2002 at 6.) Because the 50 percent set aside for agricultural soils appears to reasonably balance appellants' interest in developing the land with New Britain Township's interest in maintaining prime farmlands, we

find that the 50 percent set aside for agricultural soils was a valid exercise of the township's police power. Further, because appellants' tract of land contains no geographic or environmental features that would cause any further set-asides after the set-aside for agricultural soils, we find that the portion of the ordinance requiring preservation of geographic and environmental features does not limit appellants' ability to develop the tract and is therefore not invalid under the facts and circumstances of this case.

Based on the specific facts and circumstances contained in the record before us, we find that Ordinance 2000-12-02 is a valid exercise of legislative discretion, reasonably and substantially related to the health, safety and welfare of the citizens of New Britain Township. The ordinance purports to protect agricultural lands in New Britain Township. While the ordinance does require a landowner to set aside 50 percent of soils classified as agricultural by the federal, state and local governments, it does not prevent development of the remaining 50 percent of the land in cases like the one before us, where the remaining land contains no geographic or environmental features that would require further set-asides.

Because the ordinance permits development on the land not set aside for agricultural preservation, we also find that the 1.9-acre minimum lot size is a valid and lawful exercise of the police power in this case. The restrictions placed on the use of the property in the instant matter are reasonable, and allow for a considerable amount of construction while simultaneously affording the opportunity to preserve rich soils and agricultural land in the township. The minimum lot size here does not appear to be unduly restrictive when considered with

the fact that a landowner is free to develop all of the land not protected as agricultural soil into 1.9-acre lots. Appellants have argued that the 1.9-acre minimum was chosen arbitrarily. We disagree. During the hearings prior to adoption of Ordinance 2000-12-02, the township considered carefully the number of acres that would constitute the minimum lot size. It appears from the record that the township arrived at 1.9 acres because that number is less than 2 acres, which had been found to be unconstitutional by Pennsylvania courts. Therefore, it appears that the township chose the number that would most ably protect agricultural soils without running afoul of constitutional considerations. As noted, the township has a right to protect agricultural soils. Therefore, the choice of 1.9 acres was not arbitrarily chosen, but was chosen after careful consideration and pursuant to a legitimate exercise of the township's police power. Thus, the landowners have not shown that Ordinance 2000-12-02 is unduly restrictive or arbitrary.

Under the facts presented to this court in the case sub judice, we decline to approve appellants' curative amendment plan. Instead, we remand the matter to the New Britain Township Board of Supervisors for proceedings not inconsistent with this opinion. We further direct that this court will retain jurisdiction over all matters related hereto.

## V. CONCLUSION

We therefore enter the following order:

## ORDER

And now, June 28, 2005, upon consideration of appellants' appeal from the December 8, 2003 decision of the New Britain Township Board of Supervisors deny-

ing appellants' curative amendment challenge, and following a Rule *27 conference thereon, submission of briefs, oral argument, and a full review of the record, it is hereby ordered and decreed that the denial of said challenge by the New Britain Township Board of Supervisors is hereby sustained.

It is further ordered that the matter is remanded to the New Britain Township Board of Supervisors for proceedings not inconsistent with this opinion. It is directed that this court shall retain jurisdiction over all matters related hereto.