# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AUUE, Inc.,
                Appellant

v.

Borough of Jefferson Hills
Zoning Hearing Board

v.

Borough of Jefferson Hills and
Residents of Jefferson Hills

 :
 :
 :
 :  No. 871 C.D. 2020
 :  SUBMITTED: May 13, 2021
 :
 :
 :
 :
 :
 :
 :
 :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: August 9, 2021

Appellant AUUE, Inc. (AUUE) appeals from the Court of Common Pleas of Allegheny County's (Trial Court) August 10, 2020 order,[1] through which the Trial Court affirmed the Borough of Jefferson Hills Zoning Hearing Board's (Board) October 24, 2019 decision. Appellee Residents of Jefferson Hills (Residents) prompted the Board's decision by challenging the Borough zoning officer's issuance of a zoning permit to AUUE, which pertains to a development project that AUUE desires to undertake in the Borough. Specifically, the Board determined that AUUE

---

[1] The order is dated August 7, 2020, as is the opinion to which it is attached; however, both the order and opinion were not docketed until three days later.

did not have permission by right under the Borough's Zoning Ordinance[2] to construct a medical center[3] and that, as such, the zoning officer had erred in granting the sought-after zoning permit. After thorough review, we reverse the Trial Court.

## I. Facts and Procedural History

On August 27, 2018, AUUE filed a zoning permit application (Zoning Application) with the Borough for a proposed development called UPMC South, a medical center that would consist of "a [h]ospital, [a] [m]edical [c]linic, [m]edical [p]rofessional [o]ffices[,] and a [h]elipad as an [a]ccessory [u]se." Board's Decision, Findings of Fact (F.F.) ¶¶5-6; Trial Ct. Record (T.C.R.) at 2713.[4] Though this Zoning Application contained the description "Application for Temporary or Final Zoning Approval for Occupancy and Use And Certification of Use and Occupancy[,]" AUUE also made clear therein that the "[Zoning] Application [was] only for zoning approval and not for occupancy." T.C.R. at 2713. The UPMC South development involves five contiguous parcels of land, all of which are owned by AUUE: Lot 600-L-67, which is partially zoned O-P, *i.e.*, office park, and partially zoned C-1, *i.e.*, commercial; Lot 767-D-375, which is entirely zoned O-P; Lot 660-S-40, which is partially zoned R-1, *i.e.*, residential, and partially zoned O-P; Lot 767-G-200, which is entirely zoned R-1; and Lot 767-H-14, which is also entirely zoned R-1. Board's

---

[2] Borough of Jefferson Hills Zoning Ordinance, Allegheny County, Pa., *as amended* (2000), available at https://www.jeffersonhillsboro.org/ZoningOrdinance.aspx (last accessed August 6, 2021).

[3] "Medical center" is defined in the Borough's Zoning Ordinance as "[a] development comprised of two (2) or more of the following uses: medical clinic, medical professional offices, medical research facility, nursing home or hospital." Zoning Ordinance § 102.2. None of the parties dispute that UPMC South, as proposed, falls within the parameters of this definition.

[4] AUUE is a wholly owned subsidiary of the University of Pittsburgh Medical Center, a healthcare provider better known by the acronym UPMC. Board's Decision, F.F. ¶6.

2

Decision, F.F. ¶¶1-3; T.C.R. at 2714. The five parcels are treated as separate properties under the Borough's Zoning Ordinance. This separate treatment would change only if AUUE elected to "redefine the lots" by submitting a subdivision plan or lot unification plan to the Borough and having that plan approved. *Id.* ¶¶3-4.

The Zoning Application, as summarized by the Board, describes UPMC South's particulars as follows. The medical center would be situated entirely within the O-P portion of Lot 600-L-67, while accessory parking lots would be located on Lots 767-D-375 and 660-S-40. *Id.* ¶¶8-13. It is not clear whether the parking lot proposed for Lot 660-S-40, which would be used by UPMC South staffers, would be entirely in the section zoned O-P. While AUUE indicated that this would be the case, the Zoning Application does not show where the boundary line lies between the portions of this parcel respectively zoned O-P and R-1. *Id.* ¶12. Thus, it is possible that the parking lot either spills over into the R-1 region or is not situated far enough from the area zoned R-1. *Id.* In addition, a gated access road would cross Lot 767-D-375, which would connect with a nearby artery known as Practice T Drive. *Id.* ¶13. Finally, the Zoning Application does not call for any development on either Lot 767-G-200 or Lot 767-H-14, although Practice T Drive crosses both properties. As such, "Practice T Drive . . . could be used as an access road . . . [that] connect[s on these properties] to the [g]ated [a]ccess [d]rive" and establishes a road link over that route to the aforementioned staff parking lot. *Id.* ¶14.

The Borough then spent roughly the next two months reviewing the Zoning Application. On October 1, 2018, the Borough's zoning officer contacted AUUE, informing it that he "required corrections, clarifications[,] or additional information" regarding multiple portions of the Zoning Application. *Id.* ¶16. In response, AUUE submitted additional information to the zoning officer on October 11, 2018. *Id.* ¶¶17-

3

18. The Borough's planning consultant then "requested additional information regarding parking count documentation" from AUUE on October 19, 2018. *Id.* ¶19. AUUE sent revised plans with this additional information for UPMC South to the Borough's zoning officer on October 25, 2018. *Id.*

On October 31, 2018, the Borough's zoning officer notified AUUE via letter that he had approved its Zoning Application. *Id.* ¶20; Reproduced Record (R.R.) at 366a. As stated by the zoning officer:

> This approval applies to ZONING ONLY and shall not relieve [AUUE] from obtaining other such approvals and permits as may be required by Borough [o]rdinance including, but not limited to, those identified below. Further, the issuance of this [zoning] permit is conditioned specifically on the following:
>
> - The MEDICAL CENTER use (comprised of hospital, medical clinic, and medical professional offices), with a helipad as an accessory use, is approved for the parcels indicated on the [zoning] permit, within the O-P Office Park Zoning District.
> - No development activity may occur on the site until [AUUE has] secured approval for land development from the Borough.
> - Issuance of this zoning permit does not relieve [AUUE] of any requirements of the Borough['s] Zoning Ordinance as part of the land development application review process required by the Borough['s] Subdivision and Land Development Ordinance.
> - No grading or earthwork activity may occur on the site until [AUUE] secures a grading permit or land development approval from the Borough.
> - No building construction may occur until [AUUE] secures a building permit from the Borough.
> - This [zoning] permit shall expire twelve months from the date of issuance as indicated by the date of this letter, above.

4

R.R. at 366a.

The Residents appealed the zoning officer's decision to the Board on November 19, 2018. The Board then held 11 hearings over the course of roughly 10 months and, on October 24, 2019, granted the Residents' appeal. The Board offered three justifications for its decision. First, it acknowledged that a medical center is a by-right use for properties zoned O-P, per Section 701.1.a of the Zoning Ordinance; however, the Board stated that Section 701.1.a had to be construed along with the Zoning Ordinance's relevant statement of intent, in Section 700, as well as the community development objectives from the Borough's 1997 Comprehensive Plan, which were incorporated by reference through Section 101.3. Board's Decision, Discussion and Conclusions of Law (C.L.), § 1. In addition, the Board noted that a facility known as Jefferson Hospital is situated on land currently zoned O-P, but had initially been allowed as a conditional use under its property's previous R-1 zoning designation. *Id.* Taking all of this into account, the Board concluded that Section 701.1.a had been intended "to bring the existing Jefferson Hospital into the full conformity with the Ordinance as a use by right," and to allow for development that was "ancillary" to Jefferson Hospital, but does not serve to authorize *new* hospitals or medical facilities by right on land zoned O-P. *Id.* Furthermore, the Board reasoned that land zoned O-P is not suitable for "high-intensity uses[,]" like that proposed by AUUE for UPMC South, and stated that this determination was supported by the particulars of the 1997 Comprehensive Plan, as well as by testimony that had been offered at the Board's hearings by several former Borough officials. *Id.*

Second, the Board noted that the Borough's zoning officer had testified that he considered the permit he had approved to merely be a "use permit," in that it only served to recognize that AUUE was allowed by right to build a medical center on

5

land zoned O-P. *Id.* § 3. In addition, the Board highlighted the zoning officer's acknowledgement that the Zoning Application did not fully satisfy the strictures of the Borough's Zoning Ordinance, as well as that "he [had] maintained that he did not consider [this] in making his decision to issue the [z]oning [p]ermit." *Id.* Consequently, the Board concluded that the zoning officer had violated both Section 614 of the Pennsylvania Municipalities Planning Code (MPC)[5] and Section 1201.2 of the Borough's Zoning Ordinance, both of which articulated the scope of the zoning officer's duties and powers. *Id.* The Board stated that

> [t]here is no specific authorization in the MPC or the Zoning Ordinance for the [z]oning [o]fficer [to] issue a [u]se [p]ermit that would be conditioned on [an a]pplicant later complying with the provisions of the Zoning Ordinance, in this case through the land development process.
>
> . . . .
>
> The zoning issues relative to [AUUE's p]ermit [a]pplication . . . should have been resolved by the [z]oning [o]fficer on his full review of the [permit a]pplication. If there were issues resolving compliance with provisions of the Zoning Ordinance, the [z]oning [o]fficer should have rejected the issuance of the [z]oning [p]ermit until such issues were corrected by . . . AUUE . . . whether through submitting a sub-division plan, altering [its] plans, seeking variances and/or conditional uses for the portions of it[s] plans in which zoning issues had not been resolved.

*Id.*

Finally, the Board determined that the Residents had identified multiple ways in which the Zoning Application failed to comply with the Zoning Ordinances, each of which served as a basis for denying the application. *Id.* § 4. These were as follows:

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10614.

portions of the gated access drive traverse land zoned R-1, in violation of Section 201.1; the parking lots proposed for Lots 767-D-375 and 660-S-40 constitute accessory uses without a primary use on those lots, in violation of Section 102.2; no parking spaces would be situated along with the medical center on Lot 600-L-67, in violation of Section 902.6.a.9, which requires such spaces to be located on the same lot as a development's principal use; and Lots 660-S-40, 767-D-375, 767-G-200, and 767-H-14 would not have direct access to a collector or arterial road, in violation of Section 701.3. *Id.* § 4-4(D).[6] While noting that some of these deficiencies could potentially be cured through a revised development plan, the subdivision and land use process, or by obtaining variances, the Board nonetheless concluded that the zoning officer should have deemed them fatal to the Zoning Application, instead of issuing what amounted to an advisory opinion. *Id.* §§ 3-4(D).

AUUE then appealed the Board's decision to Trial Court, which took no additional evidence and affirmed the Board on August 10, 2020. In doing so, the Trial Court deferred to the Board's interpretation of the Zoning Ordinance and concluded that the Board had properly determined that AUUE was not permitted by right to build its desired medical center. Trial Ct. Op., 8/10/20, at 3-5. The Trial Court considered this conclusion to be entirely dispositive and, as such, declined to substantively address any other issues that had been raised by AUUE. *Id.* at 5.

In response, AUUE filed the instant appeal with our Court.

---

[6] The Board also noted that, per Section 201.2 of the Zoning Ordinance, a hospital is required to have side yard and rear yard setbacks from adjacent residential properties of at least 200 feet; in the Board's estimation, it was "likely" that the location of the gate access drive would fall "well within the 200 foot buffer [area]" and would thus be out of compliance with this requirement. Board's Decision, C.L. § 4(A).

7

AUUE raises three overarching arguments for our consideration, which we summarize as follows. First, the Trial Court erred when it affirmed the Board's decision, as the Board incorrectly determined that AUUE's proposed medical center was not a by-right use. AUUE's Br. at 14-24. Second, the Trial Court erred by failing to address AUUE's contention that several of the Board's factual findings were not supported by substantial evidence, namely that: (a) there was a dispute as to whether the proposed helipad was a valid accessory use; (b) the staff parking lot on Lot 660-S-40 was possibly located, in part, on land zoned R-1 or was not the required distance from such land; and (c) the gate for the gated access drive was located on land zoned R-1. *Id.* at 24-29. Finally, the Trial Court mistakenly failed to address AUUE's claims that: (a) the Board erred by addressing concerns that were outside the scope of the issue before it, *i.e.*, whether the zoning officer had properly determined that AUUE's proposed medical facility was an authorized use by right, and (b) the Board improperly deemed the zoning officer's approval of AUUE's Zoning Application to be an advisory opinion. *Id.* at 30-33.

We begin with the question of whether the Zoning Board correctly determined that, per the Borough's Zoning Ordinance, AUUE's proposed medical facility did not constitute a by-right use. It is well settled that "[t]he interpretation of a zoning ordinance is a question of law." *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86

---

[7] "[O]ur standard of review in a zoning case, where the [c]ourt of [c]ommon [p]leas has taken no additional evidence, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. . . . An abuse of discretion will be found only if the zoning board's findings are not supported by substantial evidence[.]" *Zoning Hearing Bd. of Sadsbury Twp. v. Bd. of Sup'rs of Sadsbury Twp.*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002) (internal citation omitted). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

A.3d 330, 336 (Pa. Cmwlth. 2014). As such, though we must accord "great weight and deference" to the Board's interpretation of the Borough's Zoning Ordinance, *River's Edge Funeral Chapel & Crematory, Inc. v. Zoning Hearing Board of Tullytown Borough*, 150 A.3d 132, 139 (Pa. Cmwlth. 2016), "our standard of review is [nonetheless] *de novo* and our scope of review is plenary." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018).

> Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See* 1 Pa. C.S. § 1921; *Bailey v. Zoning Bd. of Adjustment of City of Phila.*, . . . 801 A.2d 492 ([Pa.] 2002); *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.,* 918 A.2d 171 (Pa. Cmwlth. 2007) (*en banc*), *aff'd*, . . . 974 A.2d 1144 ([Pa.] 2009). In pursuing that end, we are mindful that a statute's plain language generally provides the best indication of legislative intent. *Id.* Thus, statutory construction begins with examination of the text itself. *Id.*

> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921.

> Thus, if we determine the ordinance provision at issue is unambiguous, we must apply it directly as written. *Bowman v. Sunoco, Inc.*, . . . 65 A.3d 901 ([Pa.] 2013); *see* 1 Pa. C.S. § 1921(b). However, if we deem the language of the ordinance ambiguous, we must then ascertain the legislative body's intent by statutory analysis, wherein we may consider numerous relevant factors. *Id.* An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *Adams Outdoor Adver.,*

> *L.P. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa. Cmwlth. 2006).
>
> Further, "[w]hile it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words." *Zappala Grp., Inc. v. Zoning Hearing Bd. of Town of McCandless*, 810 A.2d 708, 710 (Pa. Cmwlth. 2002).

*Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509-10 (Pa. Cmwlth. 2014). Likewise, it is

> [g]enerally [the case that] a zoning ordinance should be construed in a manner that does not, by mere implication, fetter a landowner's reasonable use of his land. Thus, the permissive nature of an ordinance provision should be taken in its broadest sense and restrictive provisions should be construed in the strictest sense. . . . However, this rule of construction yields where the intent of the local legislative body can be discerned with the aid, if necessary, of the usual interpretational tools, such as looking to the structure of the ordinance as a whole to ascertain legislative intent.

*Hess v. Warwick Twp. Zoning Hearing Bd.*, 977 A.2d 1216, 1221-22 (Pa. Cmwlth. 2009) (internal citations omitted).

With these precepts in mind, we conclude that the Board committed an error of law when it determined, despite the Zoning Ordinance's plain language, that AUUE was not allowed by right to build a medical center on land zoned O-P. As noted above, the Board specifically relied upon three portions of the Zoning Ordinance to support its logic: Section 701.1.a, Section 700, and Section 101.3. The first, which specifically addresses uses that are allowed by right on O-P zoned properties, reads in pertinent part:

> Uses by Right
>
> In any O-P District, the land, buildings or premises shall be used by right only for one or more of the following:

1. Principal Uses:

    . . . .

    (e) Hospital

    . . . .

    (g) Medical Center

    . . . .

Zoning Ordinance § 701.1.a. The second articulates the Borough's broader desires

for how O-P zoned land should be used:

> Statement of Intent
>
> In addition to the general goals of the [Zoning Ordinance's] preamble, the districts established in these regulations are intended to achieve the following:
>
> To encourage the development of medical offices, medical clinics and diagnostic centers ancillary to the Jefferson Hospital;
>
> To encourage other businesses and professional offices and supporting services in a campus style setting with protections for adjoining residentially zoned properties; and
>
> To provide a compatible zoning classification to serve as a transition between residential properties and commercial properties in locations accessible to the regional highway network.

*Id.* § 700. The third ties the Zoning Ordinance to the Borough's 1997 Comprehensive

Plan:

> Community Development Objectives
>
> The zoning regulations and districts set forth in this [Zoning] Ordinance are made in accordance with the 1997 Comprehensive Plan Update for the Borough . . . , and the Community Development Objectives of that Plan are hereby incorporated by reference. In addition, to protect the general welfare of the Borough, this [Zoning] Ordinance is intended to achieve, among others, the following purposes:

> To lessen congestion in the streets, to secure safety from fire and other dangers, to provide adequate light and air, to prevent the overcrowding of the land, avoid undue concentrations of population, to facilitate adequate provisions for transportation, water, sewerage, schools, parks and other public requirements, as well as the conservation of the value of land and buildings. These were made with reasonable consideration, among other things of the existing character of the various areas, their respective suitability for particular land uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the Borough[.]

*Id.* § 101.3. The 1997 Comprehensive Plan's relevant goal and objectives, which are incorporated into the Zoning Ordinance through Section 101.3, are articulated as follows:

> Goal: Recognize the importance of the Jefferson . . . Hospital to the Borough's economic base and encourage medical related development in the future.
>
> Objectives: Create a new O-P, Office Park, District to encourage medical offices, research, clinics and similar facilities in a campus-like atmosphere with design requirements that provide protections for adjacent residential areas.
>
> Identify existing developed and future development sites for the new O-P District and offer economic incentives for their development and expansion.

1997 Comprehensive Plan at 60; T.C.R. at 2829. Furthermore, we must note two other parts of the Zoning Ordinance. First, Section 102.1, which makes clear that, for purposes of interpreting the Zoning Ordinance, "[t]he singular number includes plural and the plural the singular." Zoning Ordinance § 102.1. Second, Section 101.5, which, like Section 101.3, deals with the connection between the 1997 Comprehensive Plan and the Zoning Ordinance:

> Relationship to the Comprehensive Plan
>
> This [Zoning] Ordinance is adopted to promote an orderly plan of development according to the Borough's adopted

> Comprehensive Plan, including data on existing conditions, statements concerning the proposed plan and evaluations of implementation techniques. Such materials shall be considered as legislative history and shall be utilized when necessary to establish policy in the interpretation of this [Zoning] Ordinance.

*Id.* § 101.5.

These provisions, when read together, lead us to several conclusions. First, medical centers are unambiguously authorized as a *by-right* use in the Borough on properties zoned O-P. Second, though both the 1997 Comprehensive Plan and the Zoning Ordinance *encourage* development that is ancillary to the existing Jefferson Hospital, the wording that is used therein does not expressly *prohibit* the construction of other hospitals or medical centers within O-P areas. Third, as the singular and the plural are interchangeable for purposes of the Zoning Ordinance's terms, neither "Hospital" nor "Medical Center," as used in Section 701.1.a, can be interpreted as authorizing only a single hospital or medical center in the Borough's O-P districts. Fourth, the "materials" referenced in Section 101.5 cannot be used to interpret the policy intent behind the Zoning Ordinance in this instance, as the plain language of the Zoning Ordinance both controls and establishes the by-right nature of medical facilities. As we have made clear in the past,

> a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. *Hill v. Zoning Hearing Bd. of Maxatawny Twp.*, 597 A.2d 1245, 1251 (Pa. Cmwlth. 1991). "[Z]oning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995) (quoting *In re Kline Zoning Case*, . . . 148 A.2d 915, 916 ([Pa.] 1959)). Thus, [a zoning b]oard is required to apply the terms of [a z]oning [o]rdinance as written rather than deviating from those terms based on an unexpressed policy.

13

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007). Consequently, the Board erred by ignoring the actual wording of the Zoning Ordinance and by instead inferring that the proposed primary use for UPMC South, *i.e.*, a medical facility, was barred by implication.

Furthermore, the Board should have limited its review to the question of whether that use was allowed by right, instead of straying farther afield into broader concerns about the Zoning Application's overall compliance with the Zoning Ordinance.[8] As noted above, the Board identified four separate Zoning Ordinance violations present in the Zoning Application: (1) the gated access drive impermissibly crosses R-1 zoned land; (2) parking lots are situated as an accessory use on parcels without a primary use; (3) no parking spaces are provided on the same parcel as the medical center; and (4) four parcels within the proposed UPMC South development do not have direct access to a collector or arterial road. Board's Decision, C.L. § 4-4(D). AUUE does not necessarily dispute that the violations exist; rather, it claims that the Board did not have jurisdiction to consider these concerns, because the only issue properly before the Board was whether the zoning officer correctly concluded that AUUE's proposed medical center was a use allowed by right. AUUE's Br. at 30-33. According to AUUE, the identified violations "are not relevant to the use approval and are only properly raised during the land development process. These [violations relate to] site features that will be addressed by the

---

[8] The Trial Court did not address this issue, due to the fact that it (incorrectly) affirmed the Board on the basis that the Board had correctly determined that AUUE's proposed medical facility was not an authorized by-right use. *See* Trial Ct. Op., 8/10/20, at 3-5. Even so, the Trial Court's error does not stand as an impediment to *our* ability to address that issue. This is for two reasons: first, as mentioned *supra*, it is the Board's decision, rather than the Trial Court's, which we are inspecting for abuses of discretion and errors of law; second, this issue presents a question of law, for which our "standard of review is *de novo* and . . . scope of review is plenary." *City of Clairton v. Zoning Hearing Bd. of City of Clairton*, 246 A.3d 890, 897 n.8 (Pa. Cmwlth. 2021).

14

[Borough's] Planning Commission and the Borough Council and should not have been a part of these proceedings." *Id.* at 33.

We agree with AUUE's argument that the sole issue properly before the Board was whether the proposed medical facility was a use allowed by right. This is due to the breadth of the zoning officer's authority, as delineated through the MPC and the Zoning Ordinance. Per Section 614 of the MPC, "[t]**he zoning officer shall administer the zoning ordinance in accordance with its literal terms, and shall not have the power to permit any** construction or any **use** or change of use **which does not conform to the zoning ordinance**." 53 P.S. § 10614 (emphasis added). Similarly, Section 1201.1.a of the Zoning Ordinance describes the zoning officer's duties, in relevant part, as being "1. To enforce the provisions of this Ordinance; . . . [and] 3. **To issue permits only for** construction and **uses which are in accordance with the regulations of this Ordinance and other applicable ordinances as may be subsequently amended**[.]" Zoning Ordinance § 1201.1.a (emphasis added). In addition, Section 1201.2 of the Zoning Ordinance states that "[t]his Ordinance shall be enforced by the [z]oning [o]fficer[.] . . . No permit of any kind as provided for in this Ordinance shall be granted for any purpose except in compliance with the provisions of this Ordinance or a decision of the . . . Board or an [o]rder of the [c]ourt." *Id.* § 1201.2.

Reading this statutory and ordinance language together, and applying it to the matter before us, we conclude that the Borough's zoning officer has the power to issue a use permit. Both the MPC and the Zoning Ordinance establish that a zoning officer can dispense permits relating to construction on a property, as well as ones relating to a property's use. *See* 53 P.S. § 10614; Zoning Ordinance §§ 1201.1.a, 1201.2. As such, the Borough's zoning officer may issue a permit recognizing that

15

a piece of land may be used in a certain, Zoning Ordinance-compliant way, even if that permit does not actually authorize the applicant to commence development or resolve all extant zoning matters. Here, the Zoning Application related solely to gaining governmental approval of AUUE's desired use, but did not pertain to the larger concern of whether the UPMC South development, as proposed, complied with *all* portions of the Zoning Ordinance. *See* T.C.R. at 2713. As such, the Board incorrectly concluded that the Borough's zoning officer could not grant a use permit to AUUE and erroneously delved into broader concerns beyond whether the zoning officer properly concluded that the proposed use was allowed by the Zoning Ordinance.

### III. Conclusion

In light of the foregoing analysis, we reverse the Trial Court's August 10, 2020 order.

_____
ELLEN CEISLER, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AUUE, Inc.,                          :
                    Appellant       :
                                    :
          v.                        :  No. 871 C.D. 2020
                                    :
Borough of Jefferson Hills          :
Zoning Hearing Board                :
                                    :
          v.                        :
                                    :
Borough of Jefferson Hills and      :
Residents of Jefferson Hills        :

# **O R D E R**

AND NOW, this 9th day of August, 2021, it is hereby ORDERED that the Court of Common Pleas of Allegheny County's August 10, 2020 order is REVERSED.

_____
ELLEN CEISLER, Judge